LOURIE, Circuit Judge.
 

 This is an appeal from the May 2, 1991, decision of the United States Claims Court granting the Maritime Administration, U.S. Department of Transportation’s (MarAd’s), motion for summary judgment.
 
 Coflexip & Servs., Inc. v. United States,
 
 23 Cl.Ct. 67 (1991). The court denied Coflexip’s claim for certain proposal preparation costs, limiting recovery to those costs required as a
 
 *952
 
 precondition of the contract award.
 
 Id.
 
 at 70. Because we conclude that the court erred, we vacate and remand.
 

 BACKGROUND
 

 In 1984, MarAd issued a solicitation for the procurement of a system to deliver petroleum from a tanker anchored offshore to a military facility located on-shore. Coflexip submitted a proposal to furnish the flexible pipe conduit sub-system for this solicitation. Upon award of the contract to another contractor, Coflexip filed a formal protest with the General Accounting Office. The GAO determined that Coflexip was entitled to recover its proposal preparation costs because MarAd had improperly conducted the procurement and, but for MarAd’s improper conduct, Coflexip would have had a substantial chance of being awarded the contract.
 
 Coflexip & Servs., Inc.,
 
 85-1 Comp.Gen. 554 (1985).
 

 Coflexip submitted a request to MarAd for reimbursement of $257,142 in proposal preparation costs. Following a government audit, MarAd reimbursed Coflexip for all proposal preparation costs Coflexip incurred prior to its submission of the technical and cost proposals to MarAd, a total of $54,141. The remaining costs claimed by Coflexip included $46,359 in legal expenses relating to the bid protest, $10,340 in miscellaneous travel and entertainment expenses, and $146,302 in prototype development expenses. Coflexip filed suit in the United States Claims Court seeking recovery of these remaining expenses.
 
 Coflexip & Servs., Inc.,
 
 20 Cl.Ct. 412 (1990).
 

 On cross-motions for summary judgment, the court rejected MarAd’s argument that, as a matter of law, prototype costs incurred subsequent to proposal submission in a negotiated procurement cannot be proposal preparation costs. Furthermore, the court determined that genuine issues of material fact remained regarding any contractual requirement for Coflexip to build a prototype as a precondition of the contract award. As a result, the court denied both summary judgment motions.
 
 [1]
 

 MarAd filed a second motion for summary judgment of nonliability for Coflexip’s prototype development expenses. Coflexip filed a cross-motion. Determining that the solicitation did not require Coflexip to build a prototype as a precondition of contract award, the court granted MarAd’s motion.
 
 [2]
 
 Coflexip appealed.
 

 ISSUE
 

 Whether the Claims Court erred in its determination that Coflexip’s prototype development expenses could not be reimbursed as proposal preparation costs?
 

 DISCUSSION
 

 A court’s interpretation of a contract is an issue of law that is reviewed
 
 de novo. George Hyman Constr. Co. v. United States,
 
 832 F.2d 574, 579 (Fed.Cir. 1987). We conclude that the Claims Court applied an improper standard for determining which proposal preparation costs could be recovered by Coflexip. Specifically, the court erred in determining that an unsuccessful bidder’s recoverable proposal preparation costs are limited to those costs required by the solicitation or approved by MarAd upon notification by the contractor.
 

 It is clear that, under certain circumstances, an unsuccessful bidder on a government contract may recover its proposal preparation costs.
 
 See, e.g., Keco Indus. Inc. v. United States,
 
 203 Ct.Cl. 566, 492 F.2d 1200, 1203-1205 (1974). Recovery can be obtained,
 
 inter alia,
 
 if the government breached an implied-in-fact contract “to treat a bid honestly and fairly,” in which case its “conduct was arbi
 
 *953
 
 trary and capricious toward the bidder-claimant.”
 
 Coastal Corp. v. United States,
 
 713 F.2d 728, 730 (Fed.Cir.1983). Entitlement to recovery of some costs is not at issue here. What is contested is which costs are properly recoverable.
 

 The Claims Court held that Coflexip incurred prototype development costs after submission of its initial technical proposal and that, because these costs were not required by the solicitation, they were not recoverable. Coflexip does not contest that it incurred the prototype costs post-submission. However, it argues that the proper standard for determining recoverability is well-defined in the federal procurement regulations and that, under certain circumstances, post-submission costs voluntarily incurred may be recoverable proposal preparation costs. MarAd argues that the Claims Court properly limited the terms of the implied-in-fact contract to the pertinent provisions in the solicitation and that the solicitation did not require development of a prototype. We conclude that the court erred and that Coflexip is correct.
 

 In a written answer to a bidder’s presubmission question, MarAd stated that all the proposals would be treated in accordance with standard federal procurement regulations. Neither Coflexip nor the other bidders disagreed. Therefore, the terms of the present implied-in-fact contract incorporate the pertinent provisions of the regulations, as well as those of the solicitation.
 

 Part XV of the regulations defines proposal preparation costs as “costs of preparing bids or proposals on potential Government ... contracts, ... including the development of engineering data and cost data necessary to support the contractor’s bids or proposals.”
 
 [3]
 
 41 C.F.R. § 1-15.205-3 (1983). Additionally, Part XV states that “[these] costs shall be allowed to the extent that they are reasonable (see § 1-15.201-3), [and] allocable (see § 1-15.201-4).” 41 C.F.R. § 1-15.204 (1983). Accordingly, proposal preparation costs that are reasonable and allocable may be recovered by the contractor. This definition, however, does not address the issue whether post-submission costs may be proposal preparation costs.
 

 The Claims Court held that Mar-Ad anticipated a negotiated procurement for this solicitation, and MarAd does not dispute this on appeal. Part I of the regulations states that “[w]henever negotiations are conducted with several offerors ... [they] shall be offered an equitable opportunity to submit such price, technical, or other revisions in their proposals as may result from the negotiations.” 41 C.F.R. § 1-3.805-1 (1984). Additionally, the offerors must be informed of the specific date of the closing of negotiations, and proposal revisions must be submitted by that date.
 
 Id.
 
 Therefore, in a negotiated procurement, the costs a contractor incurs
 
 pursuant to ongoing negotiations
 
 with the government and in support of a revised proposal,
 
 i.e.
 
 post-submission costs, can be proposal preparation costs. However, costs which do not support an initial or revised proposal are costs which a contractor incurs in an effort to better position itself to perform any contract it should be awarded. These latter costs, incurred
 
 in anticipation of
 
 contract award, are not proposal preparation costs. The contractor assumes the risk that it will not be awarded the contract, and, accordingly, these contract preparation costs will not be recoverable.
 

 In this case, the Claims Court erred in holding that a bidder’s proposal preparation costs are limited to those expressly required by the solicitation or approved by MarAd. Since it has not determined whether Coflexip built the prototype pursuant to ongoing negotiations (as Coflexip
 
 *954
 
 contends) or in anticipation of contract award (as MarAd contends), we remand for determination of that issue. Should the Claims Court determine that Coflexip incurred post-submission costs pursuant to ongoing negotiations with MarAd and in support of a revised proposal, these costs can be considered proposal preparation costs as long as they were allocable, as defined in § 1-15.201-4, and reasonable, as defined in § 1-15.201-3.
 

 A cost is allocable if it "is incurred specifically for the contract.” 41 C.F.R. § 1-15.201- 4 (1983). It is undisputed that Coflexip built the prototype for MarAd’s solicitation. Therefore, if Coflexip built it pursuant to ongoing negotiations, the cost of building the prototype is allocable. The cost of building the prototype here clearly was incurred specifically for the contract.
 

 The cost of preparing a proposal “is reasonable if, in its nature or amount, it does not exceed that which would be incurred by an ordinarily prudent person in the conduct of competitive business.” 41 C.F.R. § 1-15.201- 3 (1983). The regulation lists various factors to be considered by a court in determining reasonableness. On remand, if the court finds that the prototype was built pursuant to ongoing negogiations, it will also need to determine whether Coflexip's post-submission costs found to be proposal preparation costs were reasonable, as defined by this regulation.
 

 CONCLUSION
 

 The court erred in determining that post-submission costs of preparing a prototype were not recoverable by Coflexip. Therefore, we vacate the summary judgment and remand for further proceedings consistent with this opinion.
 

 COSTS
 

 Costs to Coflexip.
 

 VACATED AND REMANDED.
 

 [1]
 

 . During the court proceedings, Coflexip abandoned its claim for miscellaneous travel and entertainment expenses. Additionally, the court granted MarAd's summary judgment motion on the question of liability for Coflexip’s legal expenses. Coflexip does not appeal this determination. Consequently, Coflexip’s remaining claim is limited to the expenses it incurred in developing, fabricating, and testing prototype sections of the flexible pipe conduit sub-system.
 

 [2]
 

 . Additionally, the court determined that MarAd had not induced Coflexip to develop the prototype. Coflexip does not contest that determination in this appeal.
 

 [3]
 

 . The Claims Court rejected Coflexip’s attempt to characterize the prototype as "engineering data." However, prototypes provide the government with vital information on the viability, feasibility, and serviceability of a contractor's system, which might lead to engineering data. This might be especially true here since MarAd readily admitted that they did not possess “massive" technical specifications and system design, and that although they knew how the system should perform, they did not know what the system should be. In view of our disposition of this case, we need not decide this question.