LION RAISINS, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 01–322C, 01–536C.

United States Court of Federal Claims.

March 20, 2002.

Brian C. Leighton, Clovis, CA, for plaintiff.

Brian L. Owsley, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. Michael Gurwitz, United States Department of Agriculture, of counsel.

### ORDER

MILLER, Judge.

Before the court is defendant's partial motion to dismiss plaintiff's amended complaint. The issues to be decided are whether the implied-contract theory of bid protest jurisdiction survived the 1996 amendments to the Tucker Act, 28 U.S.C. § 1491 (1994 & Supp. V 1999), and whether plaintiff can recover lost profits on a contract from which it was precluded from bidding due to the wrongful actions of the government agency. Argument is deemed unnecessary.

### FACTS

The details of this bid protest case have already been published and will not be repeated. *See Lion Raisins v. United States,* 51 Fed.Cl. 238, 240–43 (2001). On January 12, 2001, the United States Department of Agriculture (the "USDA") suspended Lion Raisins, Inc. ("plaintiff"), from government contracting for a one-year period. Plaintiff was thus precluded from bidding on two government contracts offered by the USDA as Invitation 923 and Invitation 924. Plaintiff filed bid protests in the United States District Court for the Eastern District of California, which were re-filed in the Court of Federal Claims and consolidated.

On December 14, 2001, this court granted summary judgment in plaintiff's favor as to Invitation 923, holding that the USDA's decision to suspend plaintiff was arbitrary, capricious, an abuse of discretion, and not in accordance with the law. However, defendant's motion for summary judgment was granted as to plaintiff's prayer for lost profits on the contract, which had been pleaded as an implied-in-fact contract under 28 U.S.C. § 1491(a)(1) (1994). The court concluded that plaintiff's post-award bid protest more appropriately was brought under 28 U.S.C. § 1491(b), a 1996 amendment to the Tucker Act, which this court determined "eliminated the need to construe post-award bid protests as implied-in-fact contracts." *Lion,* 51 Fed. Cl. at 250. According to that provision,

plaintiff's recovery was limited to its bid preparation and proposal costs. However, because during oral argument the parties evidenced confusion about whether any additional damages would be available to plaintiff due to the wrongful suspension, the court granted plaintiff leave to amend its complaint, "[i]f plaintiff has a legal argument that its surviving claim can be framed to recover more than plaintiff's presumably minimal bid protest costs." *Id.* at 251.

Plaintiff did amend its complaint, this time alleging jurisdiction under both 28 U.S.C. § 1491(a)(1) and § 1491(b)(1), but does not seek damages for the wrongful suspension. Instead, plaintiff again seeks recovery for breach of an implied-in-fact contract under section 1491(a), also adding a claim for breach of the regulations governing the government contracting process. Alternatively, plaintiff asserts that the bid protest provision in section 1491(b)(2) authorizes monetary relief for lost profits, as well as its bid protest costs. Beyond unspecified bid proposal costs, plaintiff seeks $400,000.00 representing lost profits. Defendant moves to dismiss the causes of action brought under 28 U.S.C. § 1491(a)(1) and to dismiss plaintiff's claim for damages in excess of bid protest costs under 28 U.S.C. § 1491(b).

## DISCUSSION

■ The objective in interpreting statutes is to give effect to the intent of Congress. *NLRB v. Lion Oil Co.,* 352 U.S. 282, 297, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957); *In re Portola Packaging, Inc.,* 110 F.3d 786, 788 (Fed.Cir.1997). Although congressional intent is found first within the language of the statute at issue, *Toibb v. Radloff,* 501 U.S. 157, 162, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), to understand fully the meaning of the statute, a court must look "not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990); *accord Associated Elec. Coop., Inc. v. United States,* 226 F.3d 1322, 1326 (Fed.Cir.2000).

Before enactment of the Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, 110 Stat. 3870 (1996) (the "ADRA"), the Court of Federal Claims' jurisdiction over a bid protest claim was predicated on the rationale that an implied contract existed between the Government and prospective bidders to treat the bidder's proposal fairly, equally, and consistently with the agency's solicitation of bids. *Keco Indus., Inc. v. United States,* 192 Ct.Cl. 773, 780, 428 F.2d 1233, 1236 (1970); *see Emery Worldwide Airlines v. United States,* 264 F.3d 1071, 1078–80 (Fed.Cir.2001) (explaining "long and complicated" history of judicial review of government contract decisions); *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1331–32 (Fed.Cir.2001) (same). The finding of an implied contract was necessary because, although the Tucker Act, 28 U.S.C. § 1491(a)(3) (1994) (repealed), afforded the court power to grant equitable relief for certain bid protest claims, it did not represent an independent grant of jurisdiction over such claims. *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1366–68 (Fed.Cir.1983) (en banc).

Former 28 U.S.C. § 1491(a) provided:

(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

. . . .

(3) To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief.

As explained by the Federal Circuit:

[A] plaintiff may not obtain equitable relief just because a court has the power to grant it, but must state a claim which is itself within the jurisdiction of the court. . . . Subsection (a)(3) thus provides a new remedy in respect of a particular type

of claim (contract) over which the court was granted jurisdiction in (a)(1) and does not provide that remedy in respect of other types of claims set forth in subsection (a)(1).

*Grimberg,* 702 F.2d at 1366. Moreover, the court's jurisdiction over bid protest claims was limited to pre-award protests. 28 U.S.C. § 1491(a)(3); *Grimberg,* 702 F.2d at 1368–69. Because no express contract could exist between the Government and a prospective bidder, the only basis under section 1491(a)(1) by which a prospective bidder could invoke the court's equitable power under section 1491(a)(3) was through the construct of an implied contract.

As a result, the Court of Federal Claims could not remedy procurement violations that affected all bidders equally, and could not review the legality of solicitation provisions, even though they could be challenged in district courts. *See, e.g., Southfork Sys., Inc. v. United States,* 141 F.3d 1124, 1135 (Fed.Cir. 1998). Congress amended the Tucker Act to remedy this discrepancy by removing bid protest remedies from section 1491(a) and providing the Court of Federal Claims with a new, and independent, basis for bid protest jurisdiction. *RAMCOR Servs. Group, Inc. v. United States,* 185 F.3d 1286, 1289 (Fed.Cir. 1999); *see also CCL Serv. Corp. v. United States,* 43 Fed.Cl. 680, 687 (1999). By enactment of the ADRA, section 1491(a)(3) was repealed and replaced by section 1491(b), which reads:

(1) Both the Unite[d] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . .

(2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

The Federal Circuit has not had occasion to determine whether the implied-in-fact contract theory of bid protest jurisdiction under section 1491(a)(1) survives the 1996 enactment of the ADRA. *See Emery,* 264 F.3d at 1082 n. 9 ("Similar to the *Impresa* court we decline to address whether implied contract theory survives the ADRA."); *Impresa,* 238 F.3d at 1332 n. 6.

Plaintiff argues that the implied-contract theory indeed persists, citing *Unified Architecture & Eng., Inc. v. United States,* 46 Fed.Cl. 56, 60 (2000), and Frederick W. Claybrook, Jr., *The Initial Experience of the Court of Federal Claims in Applying the Administrative Procedure Act in Bid Protest Actions—Learning Lessons All Over Again,* 29 PUB. CONT. L.J. 1, 16 (1999), for the proposition that Congress did not intend to eliminate a disappointed bidder's implied-contract recovery. Plaintiff does not elaborate on these sources, neither of which does more than modestly observe that, in enacting the ADRA, Congress made no express mention of the implied-contract theory, nor amended the court's jurisdiction under section 1491(a)(1) of the Tucker Act. *See Unified Architecture,* 46 Fed.Cl. at 60.[1] Indeed,

---

1. For his part, Mr. Claybrook cites *Advanced Data Concepts, Inc. v. United States,* 43 Fed.Cl. 410, 416, 423 n. 14 (1999), as supporting his conclusion that Congress did not intend to eliminate the implied-contract theory. Claybrook, *supra,* at 16 & n. 82. *Advanced Data,* however, dealt only with the merits of a claim under section 1491(b)(1). 43 Fed.Cl. at 416–17. The decision otherwise did not discuss the amendment or any congressional intent associated with it. Nevertheless, in a footnote, the court added that, while it had considered plaintiff's claim as one for breach of the implied duty to fairly consider plaintiff's bid, its earlier finding that the government procurement decision had been reasonable necessitated the failure of plaintiff's implied-contract claim. *Id.* at 423 n. 14. Although *Advanced Data* shows that at least one judge has considered a post-amendment case under the implied-contract standard, this court does not join in Mr. Claybrook's conviction that *Advanced Data* divined that Congress intended the ADRA to add a further source of jurisdiction to the existing implied-contract theory jurisdiction. Furthermore, the *Advanced Data* court did not mention section 1491(a)(1) as a jurisdictional basis, which is consistent with the court's having instead considered the implied-contract theory under section 1491(b)(1).

*Unified Architecture,* which merely addressed the issue of the implied-contract theory within the context of the proper standard of review, ultimately concluded that it was "unnecessary . . . to consider plaintiff's breach of implied-in-fact contract claim [because] plaintiff's breach of implied contract claim is comprised of precisely the same allegations supporting its bid protest claim." *Id.* at 61.

 Prior to ruling on the jurisdictional issue, the court observes that, even if it were to conclude that plaintiff's bid protest claim could be based on an implied contract, plaintiff's claim for lost profits cannot be maintained. The implied-contract claim was available to "bidders, not contractors." *Grimberg,* 702 F.2d at 1367. It therefore was well-settled that the monetary damages suffered by a disappointed bidder were limited to its bid proposal costs. *Excavation Constr., Inc. v. United States,* 204 Ct.Cl. 299, 301–02, 494 F.2d 1289, 1290 (1974) (citing *Keco,* 192 Ct.Cl. at 784, 428 F.2d at 1240; *Heyer Prod. Co. v. United States,* 135 Ct.Cl. 63, 69, 140 F.Supp. 409, 412 (1956)). Judicial precedent has long held that a plaintiff is precluded from recovering lost profits on the ground that the contract for which plaintiff bid never actually came into existence. *See Keco,* 192 Ct.Cl. at 784–85, 428 F.2d at 1240; *Heyer,* 135 Ct.Cl. at 69, 140 F.Supp. at 412.

As for the district courts, bid protest cases were governed by the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (2000).[2] The APA does not allow for the recovery of lost profits even in post-award cases. *Id.* § 702; *Cincinnati Elec. Corp. v. Kleppe,* 509 F.2d 1080, 1089 (6th Cir.1975) ("The only recognized loss which [plaintiff] or any other unsuccessful bidder sustains is the cost of preparation of bids or proposals. These costs may be recovered in an action in the Court of Claims.").

 Thus, the issue that the parties now present is not only whether Congress intended to repeal the implied-in-fact contract theory for bid protests when it repealed former

section 1491(a)(3) and enacted section 1491(b)(1), but also, if no repeal was effected, whether Congress intended to enlarge the scope of recovery under the implied-in-fact contract theory to allow a plaintiff to recover lost profits. It is now established that Congress expressly intended the ADRA to confer the Court of Federal Claims with the same power in bid protest actions that the district courts exercised under the APA. *Emery,* 264 F.3d at 1079–80; *Impresa,* 238 F.3d at 1332. As the district courts could not award lost profits in pre— or post-award bid protest cases, it is impossible to wrest from Congress's actions an intent to allow the Court of Federal Claims to grant a greater remedy in post-award cases by allowing for the recovery of lost profits. *Cf. Comm'r v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965) (statutory interpretation should not thwart obvious purpose of statute); *Pitsker v. OPM,* 234 F.3d 1378, 1383–84 (Fed.Cir. 2000) (court must avoid interpretation that produces absurd results or that "cannot be rationalized with the language, purpose, and legislative history").

The prospect of recovering lost profits under an implied-contract theory also seriously would alter equitable claims as they have been brought in bid protest cases in the Court of Federal Claims and the district courts. In both fora injunctive relief is the most common remedy, and the specter of lost profits often constitutes the irreparable harm upon which injunctive relief is based. *See, e.g., TRW Envtl. Safety Sys., Inc. v. United States,* 16 Cl.Ct. 520, 529 (1989); *Essex Electro Eng'rs, Inc. v. United States,* 3 Cl.Ct. 277, 287 (1983); *see also M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1302 (D.C.Cir.1971). To conclude that Congress now intended plaintiffs to recover lost profits on an implied-contract theory would be to severely limit, if not eliminate, the grant of injunctive relief. However, nothing the ADRA's statutory language or its legislative history suggests Congress intended to

---

2. To prevent forum shopping and to promote uniformity in government procurement award law, Congress included a sunset provision in the ADRA that terminated federal district court juris-

diction over bid protests on January 1, 2001. Pub.L. No.104–320, § 12(d), 110 Stat. at 3875; *see Emery,* 264 F.3d at 1079 (discussing legislative history of sunset provision).

change dramatically the relief available in bid protest actions.

That Congress intended for bid protest claims to be brought solely under section 1491(b) is evidenced further by the fact that, when it enacted section 1491(b), Congress also repealed section 1491(a)(3), the source of the court's jurisdiction to grant equitable relief for breaches of the implied contract to treat bids fairly brought under section 1491(a)(1). *See Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (court presumes Congress acts intentionally when it includes specific language in one section of statute but omits it in another); *Superior Fireplace Co. v. Majestic Prods. Co.,* 270 F.3d 1358, 1379 (Fed.Cir.2001) (Dyk, J., dissenting). Significantly, section 1491(a)(1) does not itself confer the court with jurisdiction to provide equitable remedies. *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1294 (Fed.Cir.1999); *Nat'l Air Traffic Controllers Ass'n v. United States,* 160 F.3d 714, 716 (Fed.Cir.1998). By the terms of the amended statute, a plaintiff can no longer maintain a claim for equitable relief for breach of an implied contract in a bid protest or any other action. The court's equitable power in bid protest actions now lies exclusively in section 1491(b). Although the language of section 1491(a)(1) remains unchanged, the enactment of the ADRA expressly limited recovery under that provision, at least in bid protest cases.

Read without reference to the former statutory language and legislative history, the plain language of the amended Tucker Act arguably still confers jurisdiction over bid protests brought as implied contracts under section 1491(a)(1). At least, the statute expressly does not prohibit such a cause of action. The relief available, however, is quite limited. The amended statute does not set forth any means for the court to grant equitable or declaratory relief, nor any basis for the award of lost profits. In contrast, new section 1491(b)(1) provides a broader and more specific basis for relief. It extends the court's jurisdiction to post-award bid protests and to challenges of the legality of solicitation provisions and other alleged illegalities

that impact all bidders equally. Section 1491(b)(1) thus provides a plaintiff greater relief than the pre-ADRA implied-in-fact contract theory under section 1491(a)(1). *See* 142 CONG. REC. S26645 (1996) (statement of Sen. Cohen) ("The amendment will expand the bid protest jurisdiction of the Court of Federal Claims."); *Miller–Holzwarth Inc. v. United States,* 42 Fed.Cl. 643, 649 (1999); *see also* Claybrook, *supra,* at 17 (explaining that ADRA extended remedy available under *Grimberg*).

■ Moreover, section 1491(b) specifically is oriented toward bid protest claims, raising a presumption that Congress intended that its provisions and limitations control in bid protest situations. *See Keene,* 508 U.S. at 209, 113 S.Ct. 2035 (discussing significance of specific versus general language); *O'Neill v. HUD,* 220 F.3d 1354, 1361 (Fed.Cir.2000). To state that section 1491(b)(1) supersedes the implied-contract theory of bid protest jurisdiction under section 1491(a)(1) is merely to say that, because section 1491(b)(1) encompasses all claims that could have been brought under the former statute and more, it obviates the need for the implied-contract theory. *See CCL,* 43 Fed.Cl. at 687 (ADRA legislation superseded the "fiction" of the implied contract). Because there is no benefit in bringing a bid protest claim as an implied contract under section 1491(a)(1), no logical reason would support the presumption that Congress intended for the implied-contract cause of action to survive the enactment of the ADRA.

■ Plaintiff's bid protest claim thus must be brought under 28 U.S.C. § 1491(b). As explained in the court's prior opinion, by its terms, section 1491(b)(1) cannot alone support a claim for lost profits. *See Lion,* 51 Fed.Cl. at 251; 28 U.S.C. § 1491(b)(2) ("any monetary relief shall be limited to bid preparation and proposal costs").

■ Plaintiff next argues that its complaint is not limited to a bid protest, but that it also properly alleges a claim founded upon a regulation. This court already has explained, however, that "[j]urisdiction in this court to consider an agency decision to debar a contractor has so far been found appropri-

ate, within carefully defined limits, only in the context of affording complete relief in bid protest claims." *Lion,* 51 Fed.Cl. at 251 (citing *Medina Constr., Ltd. v. United States,* 43 Fed.Cl. 537, 557 (1999)). Finally, plaintiff cannot maintain a contract claim under section 1491(a)(1) using the Marketing Agreement Order, 7 C.F.R. § 989.1 (2001), as the alleged agreement. Although plaintiff construes this order as a contract, the Marketing Agreement Order comprises United States Department of Agriculture regulations governing the handling, inspection, and quality of raisins and the activities of a raisin supervisory committee. A raisin handler's compliance with this regulation does not create a contract. Because this regulation does not mandate the payment of money, the court lacks jurisdiction over any claim predicated on it alone. *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Baker v. United States,* 50 Fed.Cl. 483, 489–90 (2001) (plaintiff cannot avoid *Testan's* requirements "simply by characterizing the applicable statute or regulation as creating an implied contract").

## CONCLUSION

Accordingly, based on the forgoing,

**IT IS ORDERED,** as follows:

1. Defendant's Partial Motion To Dismiss plaintiff's amended complaint is granted. Plaintiff's recovery for its claim as to Invitation 923 is limited to its bid proposal costs. Plaintiff shall file a Statement of Costs by April 17, 2002. Defendant may reply by May 2, 2002.

2. The parties shall file a Joint Status Report by April 17, 2002, proposing a schedule for resolving plaintiff's claim as to Invitation 924.

3. The court's chambers this date transmitted a copy of this order to counsel by facsimile transmission.