**LION RAISINS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Nos. 01–322C, 01–536C.**

United States Court of Federal Claims.

June 10, 2002.

**630**

Brian C. Leighton, Clovis, CA, for plaintiff.

Brian L. Owsley, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. Michael Gurwitz, United States Department of Agriculture, of counsel.

### ORDER

MILLER, Judge.

Plaintiff's Statement of Bid Proposal Costs calls for resolution of the issue whether attorneys' fees and other costs incurred by plaintiff in responding to a size protest filed with the Small Business Administration and an investigation for purposes of a Certificate of Competency are recoverable as bid preparation and proposal costs under 28 U.S.C. § 1492(b)(2) (2000). Argument is deemed unnecessary.

### FACTS

The details of this bid protest case already have been published and will only be repeated as necessary. *See Lion Raisins, Inc. v. United States,* 51 Fed.Cl. 238, 240–43 (2001). On November 22, 2000, the United States Department of Agriculture (the "USDA") issued an invitation for raisin handlers to bid on two government contracts for school lunch programs, Invitation 923 and Invitation 924. Upon receipt of plaintiff's bids, the USDA requested a Certificate of Competency ("COC") for plaintiff and initiated a size protest against plaintiff with the Small Business Administration (the "SBA"). Shortly before the bids were to be awarded, and before the SBA determined plaintiff's competency, the USDA suspended plaintiff from participating in government contracts for a period of one year. This court found that, as to Invitation 923, the USDA acted arbitrarily and capriciously in suspending plaintiff. *Id.* at 249.[1] As authorized by the Tucker Act. 28 U.S.C. § 1492(b)(2), the court awarded plaintiff its bid preparation and proposal costs. *Id.* at 251.

Now before the court is plaintiff's statement of costs incurred in relation to Invitation 923. Plaintiff's claim is for $60,958.95 in bid preparation costs, which plaintiff defines as its costs in preparing the bid, as well as its costs incurred responding to the size protest and the SBA's COC review.

### DISCUSSION

 By regulation, bid and proposal costs are "costs incurred in preparing, submitting, and supporting bids and proposals (whether or not solicited) on potential Government or non-Government contracts." 48 C.F.R. (FAR) § 31.205–18(a) (2001). Bid and proposal costs are allowable contract costs so long as they are allocable and reasonable. FAR § 31.205–18(c). To be award-

---

1. Plaintiff originally had brought a claim for both Invitations 923 and 924. Plaintiff ultimately received Invitation 924, and the parties agree that plaintiff's latter claim is now moot.

ed bid and proposal costs in a successful bid protest action, the contractor similarly must show those bid and proposal costs to be allocable and reasonable. *Coflexip & Servs., Inc. v. United States,* 961 F.2d 951, 953 (Fed.Cir.1992).[2] Expenses compensable as bid preparation costs are those in the nature of researching specifications, reviewing bid forms, examining cost factors, and preparing draft and actual bids. *Finley v. United States,* 31 Fed.Cl. 704, 707 (1994); *Power Systems,* 84–1 Comp. Gen. Proc. Dec. ¶ 344, at 2 (recovery is limited "only to those expenses incurred in the preparation of the bid itself").

The burden is on the plaintiff to prove entitlement to costs. "[A] protestor seeking to recover its proposal preparation costs must submit evidence sufficient to support its claim that those costs were incurred and are properly attributable to proposal preparation." *Stocker & Yale, Inc.,* 93–1 Comp. Gen. Proc. Dec. ¶ 387, at 4; *Maintenance & Repair,* 94–1 Comp. Gen. Proc. Dec. ¶ 381, at 3–4 (amount claimed can be recovered only to extent adequately documented and proved reasonable); *see also Naporano Iron & Metal Co. v. United States,* 825 F.2d 403, 404 (Fed.Cir.1987) (plaintiff seeking costs must submit adequate documentation to support claim of reasonableness).

### 1. *SBA-related costs*

■ According to its submission, plaintiff incurred $5,091.40 in employee time exclusively devoted to providing information to the SBA for the COC and the size protest.[3] An additional line item requests $5,092.00, incurred for work described as "[p]utting all the info into the system (Built a Program). Also worked with Cherril on the SBA." Defendant argues that, to the extent they were related to plaintiff's bid, plaintiff's SBA-related expenses constitute expenses incurred solely in order to qualify for the contract.

Costs incurred in anticipation of or to qualify for a contract award are not recoverable bid preparation expenses. *Coflexip,* 961 F.2d at 953; *Stocker & Yale,* 93–1 Comp. Gen. Proc. Dec. ¶ 387, at 4–5.

■ Plaintiff counters that these costs nevertheless are recoverable as so-called bid protest costs. It cites *Crux Computer Corp. v. United States,* 24 Cl.Ct. 223, 225–26 (1991), in which the court held that its jurisdiction was not limited to bid preparation and proposal costs, so that it properly could award bid protest costs, as well. *Accord Finley,* 31 Fed.Cl. at 707. *But see AT & T Techs. v. United States,* 18 Cl.Ct. 315, 321 (1989) (limiting recovery to bid preparation and proposal costs). These cases, however, were decided under 28 U.S.C. § 1491(a)(1) (2000). More significantly, they were decided under an implied-in-fact contract theory that no longer survives as the basis of recovery in bid protest actions. *See Lion Raisins, Inc. v. United States,* 52 Fed.Cl. 115, 120 (2002); *Concept Automation, Inc. v. United States,* 41 Fed.Cl. 361, 364 (1998) (explaining that bid protest costs were costs derived from Government's implied contract duty to treat all bidders fairly). Since 1996 the Tucker Act expressly has provided that "any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2). A disappointed bidder thus can no longer recover bid protest costs as part of a successful bid protest action. *MVM, Inc. v. United States,* 47 Fed.Cl. 361, 366 (2000) (by "allowing an award of bid proposal costs and injunctive relief and by not authorizing an award of bid protest costs," Congress balanced the need to provide incentives to challenge government errors and the concern for over-penalizing the Government); *CW Gov't Travel, Inc. v. United States,* 46 Fed.Cl. 554, 559 n. 6 (2000).

---

**2.** *Coflexip* concerned the definition of bid and proposal costs found in 41 C.F.R. §§ 1–15.205–3 & 1–15.204 (1983) (repealed). Those provisions were repealed by passage of the FAR in 1983. Because the new FAR provisions are identical to those discussed in *Coflexip* and other cases, the court deems the discussion in those cases applicable.

**3.** Specifically, plaintiff's Statement of Costs lists the following:
 1. $1,500.00 Worked on SBA–Financial/Employees Info (Accounting Dept.)
 2. $3,461.40 Worked on SBA—Putting all The Info together (Administrator)
 3. $130.00 Worked on SBA—Past customer contract info (Shipping Dept.).

■ In any case, plaintiff's costs incurred prior to the bid and in response to the SBA requests cannot be characterized as bid protest costs. Implicit in the definition of bid protest costs is the requirement that the costs be incurred in protest of a contract award to another contractor or in defense of such a protest. Indeed, both cases on which plaintiff relies involved a claim for costs incurred in the filing of post-award, formal protests with a government agency. *See Crux Computer*, 24 Cl.Ct. at 224; *Finley*, 31 Fed.Cl. at 705; *see also R.R. Donnelley & Sons, Co. v. United States*, 40 Fed.Cl. 277, 284 (1998) (plaintiff may recoup pre-award attorneys' fees incurred defending bid protest claim as bid protest costs).

To recover its SBA-related costs, therefore, plaintiff must demonstrate that, given the unique circumstances of this case, plaintiff's SBA-related costs properly may be characterized as bid preparation and proposal costs. Although plaintiff makes no specific argument that these costs are bid preparation costs, plaintiff cites *Coflexip* for the proposition that a bidder can recover costs incurred pursuant to ongoing, pre- or post-award negotiations with the Government as bid proposal costs. 961 F.2d at 953. As discussed in *Coflexip*, however, its holding to this effect refers only to costs incurred during a negotiated procurement. *Id.*

*Coflexip* did announce a general standard of allocable preparation costs as those "incurred specifically for the contract." *Id.* at 954. Under the circumstances of this case, particularly the timing of the USDA's requests to the SBA, it is fair to say that plaintiff's SBA-related costs were incurred "for the contract." Yet, this court cannot make a preliminary finding that the USDA conditioned the contract on compliance with the SBA requests so as to support a finding that plaintiff's SBA-related costs thereby were incurred "specifically for the contract." Neither invitation referenced a set-aside for small businesses. *See Lion Raisins*, 51 Fed. Cl. at 240 n. 3.[4] Because plaintiff's eligibility to bid was not predicated on size, plaintiff's

response to the size protest cannot be regarded as incurred specifically for the bid. The USDA could not deny plaintiff the contract based on its size, and resolution of the size protest matter therefore was irrelevant to contract award.

While the costs of responding to the COC can be characterized as incurred for Invitation 923, to the extent that the COC was necessary to a determination of responsibility, they cannot be deemed preparation costs incurred specifically for the contract, as opposed to non-recoverable expenses incurred to qualify for contract award. The fact that plaintiff incurred these expenses because of its desire to receive Invitation 923 does not translate into a finding that the USDA added compliance with the COC investigation as a term of the bid. Under 15 U.S.C. § 637(b)(7)(B) (2000), regardless of whether a small-business set-aside is involved, before rejecting a small business's bid on grounds of non-responsibility, an agency must refer the matter to the SBA, which, in its discretion, may issue a COC. *See also* FAR § 19.601(c) ("The COC program is applicable to all Government acquisitions."); FAR § 19.602–1(a) (non-responsibility includes, but is not limited to, capability, competency, capacity, credit, integrity, perseverance, tenacity, and limitations on subcontracting); *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 202 (D.C.Cir. 1984) (referral to SBA proper when non-responsibility believed for any reason). Once the COC is issued, the SBA's determination of responsibility is conclusive. 15 U.S.C. § 637(b)(7)(C). All the same, the government agency independently may suspend or debar a contractor under FAR subpart 9.4 prior to or in lieu of the issuance of the COC, as occurred in this case. *See* FAR § 19.602–1(a)(2)(ii); *see also Electro–Methods, Inc. v. United States*, 728 F.2d 1471, 1476 (Fed.Cir. 1984).

Suspension under the FAR does not offend the purpose of the referral, which is to protect the small business bidder from arbitrary findings of non-responsibility based upon the

---

4. Invitation 923 invited offers from raisin handlers or designated 8(a) vendors contracting with raisin handlers, as that term is defined in 7 C.F.R. § 989.15 (2002). Neither this definition,

nor the definition of "raisin handler" found in 7 C.F.R. § 900.51(i), includes size or other restrictions in the definition of an eligible raisin handler.

fact that it is a small business. *DAE Corp. v. Engeleiter*, 958 F.2d 436, 439 (D.C.Cir.1992); *accord Electro–Methods*, 728 F.2d at 1476. The referral does not become wrongful by the fact that the referral proves erroneous or unnecessary. *See Hughes Georgia, Inc.*, 96–2 Comp. Gen. Proc. Dec. ¶ 151, at 6 (because SBA has exclusive jurisdiction to determine small business competency, agency does not review decision to refer); *RBE, Inc.*, 93–2 Comp. Gen. Proc. Dec. ¶ 27, at 4 (Comptroller General will review agency referral only when agency's refusal to cooperate with COC review lead SBA to wrongfully deny COC). Whatever its actual motivations in this case, the USDA's referral to the SBA did not violate a procurement statute, but, to the contrary, was made in accordance with governing regulations.[5]

■ To the denial of $5,091.40 in identifiable SBA-related expenses, the court must add the entire $5,092.00 incurred for management work described as preparing the bid submission and working on the SBA. Where allowable and unallowable costs are aggregated into a single claim and the court cannot discern from the record before it what portion is allowable, the entire claim must be disallowed, regardless of whether the court recognizes that some ·portion of that claim may be allowable. *Stocker & Yale*, 93–1 Comp. Gen. Proc. Dec. ¶ 387, at 8; *Omni Analysis*, 69 Comp. Gen. 433, 435 (1990); *see also McCollum v. United States*, 6 Cl.Ct. 373, 380 (1984) (Board of Contract Appeals did not err when it denied entire claim on ground that claim commingled unallowable and allowable costs and claimant provided no basis by which to segregate those costs), *vacated in part on other grounds*, 7 Cl.Ct. 709 (1985). Plaintiff's description fails to delineate that portion of the work that is SBA-related, and the accompanying affidavit does not assist in this determination. Although defendant challenged this line item for this reason, plaintiff did not segregate the cost in its reply.[6] Therefore, this amount cannot be recovered.

### 2. *Attorneys' fees*

■ Plaintiff seeks $5,625.00 in attorneys' fees, but does not submit either an itemized statement of its attorneys' time or contemporaneous invoices produced by the attorney. According to the declaration of Bruce Lion, plaintiff's Vice President, these legal fees were incurred in the course of dealing with the USDA with respect to the SBA and the allegations concerning plaintiff's status as a responsible bidder. For the reasons discussed above, these fees are not allowable bid preparation costs. Furthermore, to the extent that any aspect of plaintiff's attorney's dealings with the USDA could be construed as bid preparation costs, the court nevertheless must deny the entire amount claimed because it cannot segregate the time spent on the unallowable SBA matters.[7] Alterna-

---

5. This conclusion does not leave plaintiff without a remedy. Plaintiff previously has disclosed its intent to file an application under the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412 (2000), and it does not appear that plaintiff will have any problem establishing entitlement to such an award. *See Comm'r v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (EAJA eligibility requires that (1) the claimant be a "prevailing party"; (2) the Government's position was not "substantially justified"; (3) no special circumstances make the award unjust; and (4) the fee application be submitted within 30 days of final judgment and supported by an itemized statement). With respect to this issue, plaintiff already has spent far more time and money in vindication of its rights than common notions of fairness would deem proper. The court urges defendant to reach a settlement with plaintiff as to its EAJA-eligible costs and not force plaintiff into another round of incurring costs in its attempt to make itself whole.

6. Defendant moved under RCFC 12(f) to strike plaintiff's reply on the ground that it was not contemplated by the court's March 20, 2002 order and violates RCFC 5.2 (formerly RCFC 83.1) in that it exceeds 16 pages, but does not include a table of contents, a table of authorities, or a telephone and fax number for plaintiff's attorney of record. The court had granted plaintiff leave to file its reply, and the court sees no reason to strike it now. The filing of reply briefs in claims for costs is routine, and defendant has not shown that the reply has created an undue and unforseen burden on its resources. *E.g. Baldi Bros. Constr. v. United States*, 52 Fed. Cl. 78 (2002). The court this date grants defendant's alternative motion for leave to file a sur-reply.

7. The court disagrees with defendant's assertion that "[t]he United States Court of Claims has determined that 'plaintiff may not recover legal fees' because such fees are not included within the bid proposal costs." Def.'s Br. filed May 2,

tively, the lack of contemporaneous documentation precludes the court from determining whether those attorneys' fees are reasonable and thus forecloses an award of those fees. *See W.S. Spotswood & Sons, Inc.,* 90–2 Comp. Gen. Proc. Dec. ¶ 50, at 3; *Stocker & Yale,* 93–1 Comp. Gen. Proc. Dec. ¶ 387, at 4.

### 3. *Overhead*

■ In addition to labor hours spent on bid preparation, plaintiff seeks an additional $6,348.99 in employer taxes, $2,292.05 in workers' compensation, and $687.86 in health insurance. Defendant erroneously rejoins that overhead costs are not bid preparation costs, citing *Rockwell Int'l Corp. v. United States,* 8 Cl.Ct. 662, 664 (1985), where the Court of Federal Claims stated:

> Plaintiff argues that in determining the damages to which it is entitled, lost profit and overhead must be included. Notwithstanding the distinctions which plaintiff urges, it is concluded that prior precedent flatly precludes such an award by this court.

A careful reading of *Rockwell* reveals that this statement does not constitute a holding that overhead costs are not allowable bid preparation costs. Plaintiff in *Rockwell* sought lost profits and overhead "asserted to have been lost when it was not awarded" the contract at issue. *Id.* at 663. The court's statement, therefore, did not discuss overhead as a bid preparation cost, but was directed to whether a disappointed bidder could recover these costs in a cause of action predicated on breach of implied contract. This reading is consistent with the cases that *Rockwell* cited for the above statement, neither of which held that overhead is not allowable as a bid preparation cost. *See Zisken Constr. Co. v. United States,* 209 Ct.Cl. 767, 768, 1976 WL 23861 (1976) (disappointed bidder cannot recover anticipated profits); *Keco Indus., Inc. v. United States,* 192 Ct.Cl. 773, 784, 428 F.2d 1233, 1240 (1970) (same). To the contrary, overhead costs, including workers' compensation and fringe benefits, have been awarded as bid preparation costs when

shown to be reasonable and allocable to the contract. *E.g., Mid–West Constr. Co. v. United States,* 198 Ct.Cl. 572, 581, 461 F.2d 794, 799 (1972); *Boines Constr. & Equip. Co.,* 2000 Comp. Gen. Proc. Dec. ¶ 56, at 6; *W.S. Spotswood & Sons, Inc.,* 90–2 Comp. Gen. Proc. Dec. ¶ 50, at 3.

■ Despite the appropriateness of overhead as a bid preparation cost, Mr. Lion's declaration is silent on the issue of these overhead expenses. Even if it could be inferred that the overhead was allocable, the court is given no basis by which to determine whether the amount requested reflects the appropriate share of total taxes and health insurance allocable to the contract. *Cf. West v. All State Boiler, Inc.,* 146 F.3d 1368, 1372 (Fed.Cir.1998) (discussing circumstances by which overhead can be classified as either direct or indirect expense and explaining how proportionately to allocate indirect overhead expenses to a contract). Because plaintiff again chose not to reply to defendant's straightforward challenge that plaintiff's submission was inadequate to prove that these expenses actually were paid, the court has no choice but to rule that plaintiff has failed to meet its burden of proof as to these overhead expenses and find that they are unrecoverable as bid preparation expenses. *See Mid–West Constr.,* 198 Ct.Cl. at 580, 461 F.2d at 799.

### 4. *Reasonableness of costs*

Plaintiff's remaining claims for bid proposal and preparation costs consist of the following:

> $32,000.00 incurred by management for "Pricing-calculation, estimate, comparison, & competition. Volume-capability, pricing efficiency calculation. Inventory Evaluation. Overall Review," calculated at 160 hours at $200.00 per hour;

> $1,131.00 incurred by the purchasing manager for 65 hours time "Worked on getting Quotes for Fiber & Shells," at $17.40 an hour;

---

2002, at 4. In support it cites *AT & T Techs.,* 18 Cl.Ct. at 325. Although the Government in that case had argued that legal fees never are allocable bid and proposal costs, the court held only

that the plaintiff's legal fees, incurred after contract award and in relation to the filing of its bid protest, "are not [bid and proposal] costs but are rather protest costs." *Id.*

$680.00 incurred by the shipping department for 65 hours time "Worked on Trucking Rates for California," at $10.00 an hour, plus 2 hours overtime;

$969.15 incurred by the shipping department for 65 hours time "Worked on Trucking Rates for Coast to Coast," at $13.65 an hour, plus 4 hours overtime;

$877.50 incurred by the shipping department for 65 hours time "Worked on Pig Rates for Coast to Coast," at $13.50 an hour;

$100.00 "Phone/Faxing" expenses described as "Calling & Fax Vendors"; and

$75.00 "Paper" expense described as "Printing & Copies."

Plaintiff's entire explanation for these charges, presented in spreadsheet format, consists of the following, taken from Mr. Lion's declaration:

[The spreadsheet] is self-explanatory. The $200.00 per hour charge for 160 hours is a combination of the hours expended by Al Lion, President, Dan Lion (Vice President) and myself for our own time spent on our bid proposal costs, dealing with the Small Business Administration, the size protest, the calculations and the ultimate decision as to what to bid on Invitation Number 923. As can be seen from Exhibit "A," many others at Lion also worked on this project (calculated at their hourly paycheck rate) for the hundreds of hours spend on this multi-million dollar bid . . . .

Together with plaintiff's complaint (incorporated into Mr. Lion's declaration by reference), plaintiff's submission minimally, but nevertheless adequately, shows the type and amount of work required for the bid and how hourly rates were calculated. *See Boines Constr. & Equip. Co., Inc.*, 2000 Comp. Gen. Proc. Dec. ¶ 56, at 5–6 (recognizing that documentation requirement may impose some difficulties on claimants who do not maintain internal record-keeping documents); *W.S. Spotswood & Sons, Inc.*, 90–2 Comp. Gen. Proc. Dec. ¶ 50, at 3 (claimed costs must be based on actual rates of compensation and reasonable overhead and fringe, but cannot include profit). Nevertheless, the entire $32,000.00 incurred by management cannot form the basis of an award in any amount because, according to Mr. Lion's declaration, this figure includes unsegregated and unallowable SBA-related costs. Plaintiff's submission, moreover, does not meet its burden to prove that its $175.00 in out-of-pocket expenses actually were incurred or how they related to the bid, and this amount cannot be awarded.

Defendant next posits several grounds by which the court should find the remaining expenses unreasonable. First, it charges that the number of hours expended by plaintiff in bid preparation is presumptively unreasonable in light of plaintiff's attorney's concession at oral argument that preparation of a raisin bid proposal simply involves "filling in the blanks," and that bid preparation costs in this case would not be high. Transcript of Proceedings, *Lion Raisins, Inc. v. United States*, Nos. 01–322C & 01–536C, at 23–24 (Fed.Cl. Dec. 7, 2001).

Under appropriate circumstances, a client may be bound by the representations of legal counsel. *See Romala Corp. v. United States*, 927 F.2d 1219, 1225 (Fed.Cir.1991) (imposing costs on plaintiff for attorneys' sanctionable decision to file frivolous appeal)(citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)); *Laird v. Air Carrier Engine Serv., Inc.*, 263 F.2d 948, 953 (5th Cir.1959) (as client's agent, attorney's statements may bind client). In the circumstances of this case, the court declines to hold plaintiff to its attorney's statement. First, the subject of the hearing on December 7, 2001, was not bid proposal costs. Discussion of possible costs was initiated by the court within the context of whether plaintiff's claim properly had been brought under 28 U.S.C. § 1491(a)(1), and the court did not understand plaintiff's attorney to be speaking with personal knowledge of plaintiff's actual bid proposal and preparation costs. Second, the court understood the statement as having been made as an attempt to distinguish the types of bid preparation envisioned by Congress when it enacted 28 U.S.C. § 1491(b), rather than as an affirmative representation of the costs that plaintiff would seek in its claim for costs.

Nonetheless, defendant correctly observes that, as presented, plaintiff offers little by which to determine that its preparation costs actually were incurred or whether they were reasonable.[8] It is axiomatic that in order to meet its burden of proof, a claimant must provide document sufficiently detailed so as to allow the court to determine the reasonableness of the costs claimed. *Naporano,* 825 F.2d at 404; *Baldi Bros.,* 52 Fed.Cl. at 84.

According to the bid invitation included with the complaint and incorporated into Mr. Lion's declaration, the USDA invited offer for deliveries of 449,052 cases of raisins in three package sizes. Delivery by truck or railcars was optional to the contractor, except for those destinations specifying delivery by truck or rail only. The bid listed approximately 278 deliveries to 190 different destinations ranging from California to Massachusetts, with deliveries to be made during three different specified time frames. The court therefore cannot agree with defendant that plaintiff's claimed costs are not of the type that would be incurred by a reasonable contractor in preparing a bid for large-volume raisin delivery and thus are not allocable to the bid.

Although the court is not moved by defendant's insistence that plaintiff is bound by its attorney's characterization of its bid preparation as a simple process of putting numbers into a system, plaintiff's own description of costs does not suggest a process any more involved. According to plaintiff's own descriptions, in addition to researching shipping rates, its bid preparation comprised looking up rates, assessing inventory, and putting that information into a system. Indeed, plaintiff's bid consists of 9 pages, consisting only of a two-column list of deliveries next to plaintiff's bid rate. Except to the extent that plaintiff was required to research a large number of shipping rates, nothing in plaintiff's bid suggests that this was a complex process. Moreover, the fact that plaintiff's bid was for a large-volume contract does not serve to increase significantly the complexity of the tasks performed.[9]

As to researching rates, plaintiff does not elaborate on the nature of "working on rates"; for example, it does not indicate whether plaintiff was negotiating shipping rates, in contrast merely to collecting them, and/or whether plaintiff at the same time was securing availability from shipping providers in anticipation of contract award. Plaintiff also does not explain why "worked on Trucking Rates for California" is not redundant with "Worked on Trucking Rates for Coast to Coast."

More seriously, plaintiff does not explain why it would take the same 65 hours to investigate rates within California as it took to work on the many destinations outside California. Plaintiff also does not explain the nature of a "pig rate," and the court cannot ascertain its relationship to plaintiff's bid. Plaintiff does explain, however, that it was necessary to get quotes for "Fiber & Shells," because that was the packaging material required by the USDA. Plaintiff does not explain why obtaining quotations for a packing material to be used with all shipments would require the same man-hours as researching trucking rates to 190 different destinations.

Although plaintiff should not be penalized for estimating the hours worked, the fact that four individual employees, each earning a different hourly wage, spent an identical number of hours gathering rates calls into question whether the hours requested are a

---

**8.** The court has denied that aspect of plaintiff's claim seeking recovery for the cost of building and imputing data into a system on the ground that the hours spent by management on that task cannot be distinguished from the disallowable hours spent on SBA-related matters. In addition, this amount would be unrecoverable on the ground that plaintiff makes no attempt to explain the necessity of introducing the system (or the particular program if that is what was introduced), particularly as plaintiff previously had bid on government contracts, and no explanation is offered of why a new system or program was needed for this contract. Plaintiff fails to explain what information was put into that system or how it was used in preparation of plaintiff's bid.

**9.** In addition, plaintiff's mantra that the sum of its bid preparation costs is less than 15% of the amount the Government would have saved if it had awarded plaintiff the contract is legally irrelevant to the issue of whether plaintiff's bid preparation costs reasonably were incurred in the first instance.

reasonable estimate of the hours actually worked. Sixty-five hours seem a reasonable amount of time for the investigation of rates to 190 national destinations, and the overtime is reasonable, given the fact that the USDA afforded bidders only two weeks in which to prepare bids. The court awards plaintiff $969.15 for its work on coast-to-coast trucking rates. The same presumption of reasonableness, however, cannot be applied to the time claimed for researching only California rates or for getting quotes on "Fiber & Shells."[10] Underscoring that plaintiff was granted leave to file a reply, but did not answer defendant's challenge as to the reasonableness of these costs, the court declines to award any amount for working on "Pig Rates," as plaintiff has not proven that working on "Pig Rates" was necessary for bid preparation, nor has plaintiff offered a basis by which the court can determine whether the time worked was reasonable for the bid. Although plaintiff has established that working on trucking rates and getting quotes for "Fiber & Shells" are allocable expenses, plaintiff has left the court without a basis to determine whether the substantial hours expended were expended reasonably. The court makes no award for working on "Trucking Rates to California," and it awards $36.80, representing 2 hours at $17.40 incurred obtaining quotes for "Fiber & Shells." Altogether, plaintiff's claim for trucking rates is awarded in the amount of $1,005.95. This amount is the entire amount of bid preparation costs that plaintiff has proved as its allocable and reasonable bid preparation expenses.

## CONCLUSION

1. Accordingly, based on the foregoing, and consistent with the December 14, 2001 opinion on liability, and the order entered on March 20, 2002, denying plaintiff's claim for lost profits, the Clerk of the Court shall enter judgment for plaintiff on its Statement of Bid Proposal Costs in the amount of $1,005.95.

2. Defendant's Motion To Strike the Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Statement of Costs is denied.

3. Defendant's motion for leave to file a sur-reply, incorporated into its motion to strike, is granted, and the brief is filed this date.

**IT IS SO ORDERED.**

---

10. As an alternative, defendant offers that plaintiff be compensated for 5 hours at $10.00 for gathering trucking rates. Defendant, however, offers no subjective or objective basis as to why these hours and/or rates would be reasonable for the bid.