**IMPRESA CONSTRUZIONI GEOM. DOMENICO GARUFI, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Nos. 99–400C, 01–708C.[1]

United States Court of Federal Claims.

May 3, 2002.

---

1. *See* Order dated April 11, 2002.

Sam Zalman Gdanski, Suffern, New York, for plaintiff. Jeffrey Gdanski and Scott Gdanski, Suffern, New York, of counsel.

Franklin E. White, Jr., with whom were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and Mark A. Melnick, Assistant Director, Department of Justice, Washington, DC, for defendant. Vicki E. O'Keefe and Robert E. Little, Department of the Navy, of counsel.

### OPINION AND ORDER

HEWITT, Judge.

This matter is on remand from the United States Court of Appeals for the Federal Circuit for further limited proceedings. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed.Cir.

2001). Consistent with the mandate of the Federal Circuit, specifically "to allow a limited deposition of the contracting officer concerning the basis for the responsibility determination" to permit this court to "review the responsibility determination using the standards established by the ADRA [Administrative Dispute Resolution Act of 1996]," *id.* at 1327, the parties have deposed the contracting officer and have filed supplemental briefing addressing the basis for the contracting officer's responsibility determination.

### I. Background [2]

Impresa Construzioni Geom. Domenico Garufi (Garufi or plaintiff) filed its protest in this court on June 28, 1999 challenging the award decision of the Navy (Navy or government) for a consolidated services contract including janitorial and ground maintenance services.[3] Complaint (Compl.) ¶¶ 1, 3, 4, 5. To be performed at the United States Naval Air Station in Sigonella, Italy (the Sigonella base), the services contract was for a period of a base year with four option years. Administrative Record (AR) at 271. Among other complaints regarding the award decision, Garufi alleged that the government failed to determine properly the responsibility of the successful offeror, Joint Venture Conserv (JVC).[4] Compl. ¶¶ 9, 10, 19, 22.

This court denied plaintiff's protest. With respect to the contracting officer's determination that the contract awardee was a responsible offeror, the court found that the

---

2. The factual background of the bid protest is more fully set forth in *Impresa Construzioni Geom. Domenico Garufi v. United States*, 44 Fed. Cl. 540 (1999), *aff'd in part and rev'd in part,* 238 F.3d 1324 (Fed.Cir.2001).

3. In footnote 6 of the this court's original opinion, certain preliminary procedural details concerning the bid protest were set forth:

Defendant voluntarily agreed not to order the successful offeror to begin performance of the contract until August 1, 1999. Plaintiff also filed a Motion for Expanded and Expedited Discovery with its Complaint seeking documents that were not before the GAO during its consideration of the protests. By Order of this court dated June 30, 1999, defendant was ordered to produce all materials "provided to and/or considered by and/or created by and/or relied on by the United States in evaluating

offers and making the contract award ...." After the government filed documents under the court's June 30, 1999 Order, plaintiff filed another Motion for Expanded and Expedited Discovery. An informal status conference was held on July 15, 1999 for clarification of the discovery issues and a formal status conference was held on the record on July 21, 1999. After reviewing defendant's Cross–Motion for Judgment on the Administrative Record and Opposition to Plaintiff's Motion for Summary Judgement and hearing oral argument from counsel for both parties, the court denied plaintiff's discovery motion for the reason that the matters as to which discovery was requested were all addressed in the administrative record theretofore provided.

*Impresa*, 44 Fed.Cl. at 546, n. 6 (citations omitted).

4. JVC was not a party to this litigation.

administrative record contained an unambiguous written determination by the contracting officer, Mr. David Sellman, of the awardee's responsibility:

> In this document, Mr. Sellman specifically notes that JVC was "not on the list of 'Parties Excluded from Procurement Programs,'" and that JVC had "a satisfactory record of performance, integrity, and business ethics." Not only is there clear evidence of the CO's determination, but the FAR also provides that the CO's "signing of a contract constitutes a determination that the prospective contractor is responsible with respect to that contract."

*Impresa,* 44 Fed.Cl. at 555 (citations omitted).

On review of this case, the Federal Circuit issued a mandate "to allow a limited deposition of the contracting officer concerning the basis for the responsibility determination" to permit this court to "review the responsibility determination using the standards established by the ADRA [Administrative Dispute Resolution Act of 1996]." *Id.* at 1327. Specifically, the Federal Circuit requires "an explanation by deposition of the contracting officer's reasons for accepting the [contractor's responsibility] certification." *Id.* at 1340. The Federal Circuit explains:

> In ordering the deposition of the contracting officer, we wish to make clear that we are not ordering a deposition into the contracting officer's mental process, that is, the thought process by which he made his decision. Such inquiries are inappropriate. *See, e.g., United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). The deposition is to be confined strictly to placing on the record the basis for the contracting officer's responsibility determination, that is, his grounds for concluding that JVC had a "satisfactory

record of performance, integrity, and business ethics," including most particularly his assessment of the control issue. In order to answer the question of whether there was a lack of rational basis for the contracting officer's decision, we must know: (1) whether the contracting officer, as required by 48 C.F.R. § 9.105–1(a), possessed or obtained information sufficient to decide the integrity and business ethics issue, including the issue of control, before making a determination of responsibility; and (2) on what basis he made the responsibility determination.[5]

*Id.* at 1339 (footnote numbered 11 in original).

The parties have conducted, in accordance with the Federal Circuit's guidance, the deposition of the contracting officer and have filed supplemental briefing addressing the basis for the contracting officer's responsibility determination.

## II. Discussion

### A. The Scope and Standard of Review

■ The court reviews challenged agency action in a post-award bid protest pursuant to the Tucker Act as amended by the Administrative Dispute Resolution Act of 1996. 28 U.S.C. § 1491(b)(1) (West 1994 and Supp. 2001). The Federal Circuit instructs that a responsibility determination by a contracting officer is not immune from judicial review simply because allegations of fraud or bad faith are absent. *Impresa,* 238 F.3d at 1333. Rather, the Federal Circuit states that "[t]he traditional APA standard adopted by the *Scanwell* line of cases allows for review of an agency's responsibility determination if there has been a violation of a statute or regulation, or alternatively, if the agency determination lacked a rational basis."[6] *Id.*

---

**5.** While it is not entirely clear, the Italian court may also have found that "firms led by [Carmelo] La Mastra" engaged in criminal conduct quite apart from the activities of Carmelo La Mastra, Alfio Bosco and their relatives. If the record demonstrates such broader involvement by the companies, the contracting officer's reasons for making his integrity and business ethics finding in the light of that involvement will also be an appropriate subject for the deposition.

**6.** In *Scanwell Labs., Inc. v. Shaffer,* 424 F.2d 859, 865–66, 875 (D.C.Cir.1970), the Court of Appeals for the District of Columbia Circuit held that government procurement decisions were reviewable by district courts under the standards set forth in the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706 (1946). In reviewing a challenge to an agency contract award, courts must determine whether or not the agency's action was:

While a contracting officer is not obligated by the APA to provide a written explanation for his actions, the Federal Circuit observes that "a reviewing court has power to require an explanation." *Id.* at 1337–1338. The Federal Circuit explains that an "agency should not be required to provide an explanation unless [the presumption of regularity afforded the agency's decision] has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious." *Id.* at 1338. Acknowledging that the litigant challenging that presumption of regularity "bears a heavy burden," the Federal Circuit states:

> Based on the evidence of the Italian court proceedings, the Impredil filing at the Chamber of Commerce listing Carmelo La Mastra as a technical manager and company signatory, and the letters granting Salvatore La Mastra signatory authority of Lara and Impredil, which the parties agreed were all before the contracting officer, we conclude that this is one of those rare cases in which an explanation is required.

*Id.* at 1338.

The Federal Circuit next addressed the question of how an explanation should be obtained from the contracting officer. *Id.* at 1338. The Federal Circuit first noted that in *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Supreme Court appeared to endorse the practice of requiring "administrative officials who participated in [an agency] decision to give testimony explaining their action." *Impresa,* 238 F.3d at 1338 (quoting *Overton Park,* 401 U.S. at 420, 91 S.Ct. 814). The Federal Circuit then observed that the Supreme Court "has since backed away from routinely compelling testimony of the agency decision-makers in more recent decisions." *Impresa,* 238 F.3d at 1338 (citing *Pension Benefit Guar. Corp. v. LTV Corp.,* 496 U.S. 633, 654, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990) and *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)). The Federal

Circuit further observed that the more recent Supreme Court cases make clear that "remand to the agency is the preferred course, and that testimony will be ordered only in 'rare circumstances.'" *Impresa,* 238 F.3d at 1338 (quoting *Fla. Power & Light Co.,* 470 U.S. at 744, 105 S.Ct. 1598). Noting that remand to the agency appears cumbersome in the area of government procurement, the Federal Circuit concluded that "this is one of those 'rare circumstances' where the reasons for the contracting officer's decision should be obtained by the contracting officer's testimony." *Impresa,* 238 F.3d at 1339.

Accordingly, consistent with the Federal Circuit's mandate, the court turns to review the contracting officer's explanation of his responsibility determination for the contract awardee JVC. Together with the contracting officer's explanation, the court considers the applicable legal standard for making a responsibility determination.

### B. Making a Responsibility Determination

Federal Acquisition Regulation § 9.103(b) provides that "[n]o purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility." 48 C.F.R. § 9.103(b) (1998). In making the responsibility determination, the contracting officer must determine that the contractor has "a satisfactory record of integrity and business ethics." 48 C.F.R. § 9.104–1(d) (1998). "In the absence of information clearly indicating that the prospective contractor is responsible, the contracting officer shall make a determination of nonresponsibility." 48 C.F.R. § 9.103(b) (1998). Although the contracting officer is not required to explain the basis for his responsibility determination, FAR § 9.105–2(b) requires that "[d]ocuments and reports supporting a determination of responsibility or nonresponsibility ... must be included in the contract file." 48 C.F.R § 9.105–2(b) (1998).

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statu-

tory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law ....
5 U.S.C. § 706(2) (1996).

While contracting officers are " 'generally given wide discretion' in making responsibility determinations and in determining the amount of information that is required to make a responsibility determination ... this discretion is not absolute." *Impresa*, 238 F.3d at 1334–1335 (quoting *John C. Grimberg Co. v. United States*, 185 F.3d 1297, 1303 (Fed. Cir.1999)). The Federal Circuit instructs that in view of the "cryptic" regulations concerning responsibility determinations, courts may look to the "more extensive debarment regulations for guidance, at least on questions related to the 'integrity and business ethics' requirement."[7] *Impresa*, 238 F.3d at 1335.

Here, the Federal Circuit queries, in particular, "whether the contracting officer ... possessed or obtained information sufficient to decide the integrity and business ethics issue, including the issue of control, before making a determination of responsibility." *Id.* at 1339. Accordingly, in reviewing the contracting officer's responsibility determination in this case, the court is directed to ascertain: (1) whether the contracting officer possessed sufficient information, particularly with respect to the control issue, to make a responsibility determination and (2) the basis for the contracting officer's determination. *Impresa*, 238 F.3d at 1339.

The court now examines the contracting officer's deposition testimony.

### C. The Contracting Officer's Deposition

▇ In accordance with the Federal Circuit's mandate, the contracting officer, David Sellman, was deposed on August 14, 2001. *See* Exhibit 1 to Defendant's Supplemental Brief in Response to the Court's March 15, 2001 Order (Sellman Depo.). Mr. Sellman was questioned about what he knew in August 1998, the period of time during which he considered for award and awarded the subject contract. *See* Sellman Depo. at 21–23. While aware that the contract awardee JVC was a joint venture comprised of three companies, namely, Lara, Impredil and Bosco, Mr. Sellman stated that he did not know that Lara and Impredil had performed similar contracts in the past at the Sigonella base. Sellman Depo. at 21–22; *see also Impresa*, 238 F.3d at 1327. He added that he did not know that two of the companies, Lara and Impredil, were controlled by Carmelo La Mastra, whom an Italian court found "was involved in a Mafia organization" and "had engaged in bid rigging" at the Sigonella base in the early 1990s. Sellman Depo. at 22; *see also Impresa*, 238 F.3d at 1328. Nor did he know that the third company, Bosco, was controlled by Carmelo La Mastra's brother-in-law, Alfio Bosco. Sellman Depo. at 22. Mr. Sellman was not aware that in December 1997, the two companies, Lara and Impredil, gave signatory authority to Salvatore La Mastra, Carmelo La Mastra's son. Sellman Depo. at 26–27. Nor did Mr. Sellman have knowledge that in May 1998, Impredil filed

---

7. Under the debarment regulations, a contractor may be debarred if convicted of or found civilly liable for committing fraud or a criminal offense in connection with obtaining a public contract. 48 C.F.R. § 9.406–2(a)(1) (1998). The debarment regulations state:
    The fraudulent, criminal, or other seriously improper conduct of any officer, director, shareholder, partner, employee, or other individual associated with a contractor *may* be imputed to the contractor when the conduct occurred in connection with the individual's performance of duties for or on behalf of the contractor, or with the contractor's knowledge, approval, or acquiescence.
48 C.F.R. § 9.406–5(a) (1998) (emphasis added). Moreover, similar conduct of "one contractor participating in a joint venture or similar arrangement *may* be imputed to the other participating contractors." 48 C.F.R. § 9.406–5(c) (1998) (emphasis added).

"The existence of a cause for debarment, however, does not necessarily require that the contractor be debarred." 48 C.F.R. § 9.406–1(a). Rather, the debarment regulations "direct[ ] the agency official to balance the seriousness of the contractor's actions against the 'remedial measures or mitigating factors' before making any debarment decision." *Impresa*, 238 F.3d at 1335 (quoting 48 C.F.R. § 9.406–1(a)). Among the factors to be considered in making a debarment decision is "[w]hether the contractor had effective standards of conduct and internal control systems in place at the time of the activity which constitutes cause for debarment." 48 C.F.R. § 9.406.1(a)(1). Moreover, the debarment regulations instruct that a "bona fide change in ownership or management" may reduce the extent or period of a contractor's debarment. 48 C.F.R. § 9.406–4(c)(3) (1998).

registration papers with the Chamber of Commerce listing Carmelo La Mastra as a company officer, specifically bearing the title of Technical Manager, and as a company signatory. Sellman Depo. at 27. Mr. Sellman stated that having knowledge that Carmelo La Mastra was a company principal "would certainly have [had] a major bearing on what [he] would do," and he explained that "we didn't establish [Carmelo La Mastra] was a principal .... There's nothing here .. that showed me he was a principal of the company." Sellman Depo. at 102.

With respect to the receivership agreement governing the terms of the Italian court's appointment of an independent contract administrator for JVC, Mr. Sellman admitted that he did not read the document because it was in Italian. Sellman Depo. at 46. He also admitted that he never asked to have the receivership agreement translated. Sellman Depo. at 39. Accordingly, Mr. Sellman did not know that the receivership agreement did not bar Carmelo La Mastra from acting on behalf of or participating in the management of JVC. Sellman Depo. at 39. Mr. Sellman also stated that he did not in fact know what the terms of the receivership agreement were. Sellman Depo. at 46.

Mr. Sellman recalled that, prior to awarding the contract to JVC, he saw a newspaper clipping concerning a naval investigative task force working jointly with Italian authorities to uncover a bid-rigging scheme at the Sigonella base. Sellman Depo. at 51. The article was in Italian, and Mr. Sellman did not request a translation of the article. Sellman Depo. at 51–52. However, Mr. Sellman did discuss the investigative operation generally with other members of his office. Sellman Depo. at 52. Additionally, he had general knowledge that certain assets of Carmelo La Mastra's children were seized by the Italian courts. Sellman Depo. at 24. Mr. Sellman also knew that JVC had certified that neither it nor its principals had been convicted or had an adverse judgment connected with public contracts. Sellman Depo. at 31.

Mr. Sellman stated that he understands that it is the job of the contracting officer to determine that the contractor is both capable of performing the contract and is a responsi-

ble contractor. Sellman Depo. at 58. Mr. Sellman explained that the source selection board receives a technical evaluation report on the offerors from the technical evaluation board and that the technical evaluation board is tasked with the responsibility of investigating an offeror's responsibility. *See* Sellman Depo. at 71–72. Mr. Sellman stated that he believed that at the time of making the contract decision, he "took all the appropriate steps that a reasonable contracting officer would take at that point in time.... [b]ased on what [he] had in front of [him]." Sellman Depo. at 100.

Mr. Sellman stated that, prior to making the contract award, he did know that JVC was represented by a legal administrator. Sellman Depo. at 118–19. He learned of that representation through a rough translation of a one-page letter, written in Italian, listing the court administrators who had been appointed to administer civil contracts in connection with the pending court proceedings. Sellman Depo. at 118. Admitting that he had no prior experience as a contracting officer in circumstances involving a legal administrator, Mr. Sellman stated that he independently made his responsibility determination after consulting with legal counsel, checking the debarment list, discussing with inspectors and quality assurance administrators in his office the past contract performance of the companies involved in JVC, and researching whether there were any unsatisfactory performance evaluations. Sellman Depo. at 118–20.

Mr. Sellman stated that, other than consulting counsel, he took no affirmative steps to determine whether in fact Carmelo La Mastra or his son Salvatore were still controlling the companies comprising JVC. Sellman Depo. at 121–23. Mr. Sellman explained that "[his] understanding was the court-appointed administrator was in charge of the decision-making in the company as far as signature authority, the only signature authority." Sellman Depo. at 122. Noting that the contract was signed by the court-appointed administrator, Mr. Sellman stated that he "assumed" the court-appointed administrator was controlling the contract. Sellman Depo. at 122–23. Mr. Sellman stat-

ed that he accepted JVC's certification without further investigation, and based on what he knew at the time, Mr. Sellman "did not then further pursue the issue of whether Carmelo [La Mastra] or [his son] Salvatore ... had an opportunity or position to control directly or indirectly the entity [JVC]." Sellman Depo. at 126.

### D. Evaluating the Contracting Officer's Responsibility Determination

Based on the record in this case and Mr. Sellman's deposition testimony, plaintiff argues that the Navy acted unreasonably in making its responsibility determination. Plaintiff's Supplemental Brief (Pl.'s Supp. Br.) at 22. Plaintiff asserts that "[t]here is no demonstration of the effectiveness of receivership to insulate Carmelo La Mastra from control of the JVC." *Id.* Plaintiff adds that "factually the contracting officer never even considered th[e] question [of the effectiveness of receivership]." *Id.* Citing *Robinson v. Cheney*, 876 F.2d 152, 160 (D.C.Cir. 1989), plaintiff points out that neither the trust agreement nor any other submission by JVC to the government provided assurance that Carmelo La Mastra would not act on behalf of or participate in the management of JVC. *Id.* at 22–23. Plaintiff urges that the case law and the regulations compel a finding of non-responsibility "in the absence of affirmative indications of responsibility." *Id.* at 22. Plaintiff asserts that because the contracting officer lacked sufficient information to make a responsibility determination, his decision was irrational and in violation of law. *Id.* at 24.

The government argues that the contracting officer's responsibility determination was rational for the following reasons:

> [A]t the time [the contracting officer] found JVC to be responsible, he was generally aware of Italian court proceedings involving JVC that had resulted in the appointment of a judicial administrator who signed the Section K certifications [regarding representations, certifications and other statements of bidders], and who would possess signatory authority in connection with the resulting contract. Simply stated, the contracting officer believed

that the Navy was doing business with a Italian court-appointed administrator upon behalf of JVC.

Defendant's Supplemental Brief in Response to the Court's March 15, 2001 Order (Def.'s Supp. Br.) at 11. *See also* AR at 360. The government also states that the contracting officer's deposition testimony reflects "that the involvement of the judicial administrator resolved, to *his* satisfaction, the issue of who 'controlled' JVC." Def.'s Supp. Br. at 12. Quoting the Federal Circuit's instruction that "[c]ontracting officers are 'generally given wide discretion' in making responsibility determinations .... [and][t]he test for the reviewing court is whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion,'" the government asserts that the contracting officer has provided a reasonable explanation for why he determined that JVC was a responsible offeror. Def.'s Supp. Br. at 12; *Impresa*, 238 F.3d at 1334–1335.

It is the court's view, however, that the contracting officer, based on his deposition testimony in this case, failed to conduct an independent and informed responsibility determination. The testimony of the contracting officer indicates that he relied on the recommendation of the technical evaluation board, but that his reliance was misplaced. The review performed by the technical evaluation board was limited to checking the master list of debarred firms and cursorily confirming the offeror's satisfactory performance on past contracts. That review merely assessed the technical acceptability of JVC but did not examine the offeror's responsibility.

The contracting officer relied on the technical evaluation board's recommendation without making any independent inquiries about the responsibility of the offeror even though he was aware of an ongoing investigation at the Sigonella base as well as pending court proceedings and the appointment of legal representative to handle JVC's contract administration. After he consulted with legal counsel about the existence of the legal representative for JVC and was advised of the administrator's signatory authority, the contracting officer did not independently in-

vestigate or verify the information provided to him. The contracting officer acknowledged that he made assumptions about the terms of the receivership agreement, but he did not himself read it nor did he obtain assistance in reading it.

The standard of reasonableness to be applied when evaluating a contracting officer's decision is not subjective, but objective. *See Tidewater Mgmt. Serv., Inc. v. United States,* 216 Ct.Cl. 69, 573 F.2d 65, 74 (1978) (reviewing an unsuccessful bidder's challenge to the sufficiency of the data on which the Navy based its procurement decision, court found no "objective evidence ... to indicate that [the agency officials] were unreasonable or acted without basis in this decision"). What Mr. Sellman knew at the time of making the contract award was limited by his lack of experience with court-appointed administrators and by his reliance on his own assumptions about the terms of the receivership agreement. Mr. Sellman did not have a sufficient basis (such as past familiarity with similar receivership agreements might have provided him) to support as reasonable the assumptions he made about the terms of the receivership agreement. Because he lacked sufficient information to be in a position to make the assumptions that he did and because he failed to make an affirmative assessment of JVC's responsibility, the court cannot find that the contracting officer conducted a reasonable responsibility determination.

Because the basis for the contracting officer's procurement decision was not reasonable, specifically because the responsibility determination on which the award was based violated the standards set forth in § 706 of Title 5 of the United States Code, the court sustains the protest. *See* 5 U.S.C. § 706 (1996). Plaintiff is entitled to relief.

III. Conclusion

Accordingly, based on the foregoing, it is ORDERED, as follows:

1. Plaintiff's protest is SUSTAINED.

2. Plaintiff is awarded its bid preparation and proposal costs.

3. The parties shall promptly confer about non-monetary relief. On or before May 24, 2002, the parties shall file jointly with the Clerk of the Court a statement, not to exceed 10 pages, addressing whether non-monetary relief is proper in this case. If unable to agree, the parties are directed to make separate filings not to exceed 10 pages each.

4. If the parties make separate filings, the parties may file, if desired, responsive briefs, not to exceed 5 pages, addressing the proposed relief. The parties shall file such briefs on or before May 31, 2002.

5. If necessary, based on the briefs, the court will schedule a status conference with the parties to address further proceedings in this matter.

IT IS SO ORDERED.