IMPRESA CONSTRUZIONI GEOM.
DOMENICO GARUFI,
Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 99–400 C, 01–708 C.

United States Court of Federal Claims.

June 30, 2004.

Sam Z. Gdanski, Suffern, NY, for plaintiff.

Franklin E. White, Jr., Assistant Director, with whom were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director, Civil Division, United States Department of Justice, Washington, DC, for defendant. Robert E. Little, Department of the Navy, Washington, DC, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

Before the court are Plaintiff's Claim for Bid and Proposal Costs (Pl.'s B & P Claim) and the responsive briefing thereto [1] and Plaintiff's Motion to File Out of Time to Strike and/or Supplement Plaintiff's Position

1. The responsive briefing includes: Defendant's Response to Plaintiff's Claim for Bid and Proposal Costs (Def.'s B & P Resp.), Plaintiff's Reply to Defendant's Response to Plaintiff's Claim for Bid and Proposal Costs (Pl.'s Claim Reply), Plaintiff's Supplemental Brief in Support of Plaintiff's Claim for Bid and Proposal Costs Pursuant to the Court's Order Dated September 26, 2003 (Pl.'s

with Respect to Unsupported, Incorrect and Scandalous Allegations in Defendant's March 2[4], 2004 Brief (Pl.'s Mot. to Strike) and the responsive briefing thereto.[2] The court addresses plaintiff's motion to strike before turning to plaintiff's claim for bid preparation and proposal costs.

### I. Plaintiff's Motion to Strike

■ Plaintiff moves the court to strike the following statement from Defendant's Supplemental Brief in Response to Plaintiff's Revised Claim for Bid and Proposal Costs filed on March 24, 2004:

> On or about February 11, 2004, during the period whe[n] the parties were attempting to settle Garufi's revised B & P cost claim, Italian [m]edia reported that seven persons—including Mr. Domenico Garufi, and Mr. Giuseppe Interdonato (one of Garufi's bid estimators, see Pl.Ex. 9)—were arrested related to an investigation of Mafia involvement in the award of the contracts a[t] the Naval Air Station in Sigonella, Italy. Other than the fact of the arrests, defendant is unaware of the current status of the Italian legal proceedings involving Mr. Garufi.

Pl.'s Mot. to Strike at 1 (quoting Def.'s Supp. Resp. at 6–7). Noting that three weeks prior to the filing of defendant's brief the Italian media reported that the foregoing charges were dismissed because of "'unfounded proof,'" Pl.'s Mot. to Strike at 1–2, plaintiff urges the court to strike the paragraph "as scandalous, unsupported, undocumented, uncorroborated and unsubstantiated material," *id.* at 2. Plaintiff asserts that defendant failed to reveal "what was publicly and readily available" in an attempt "to inflame [and] prejudice plaintiff's case." *Id.*

Defendant opposes plaintiff's motion on the ground that it is untimely. Def.'s Opp. at 2. Defendant also opposes plaintiff's motion on the ground that it suggests improperly that

Claim Supp.) and Defendant's Supplemental Brief in Response to Plaintiff's Revised Claim for Bid and Proposal Costs (Def.'s Supp. Resp.).

2. The responsive briefing consists of Defendant's Response to Plaintiff's Motion to Strike and/or to Supplement Plaintiff's Position (Def.'s Opp.).

"defendant's counsel knew more than what was stated in the Government's brief." *Id.* at 3.

Rule 12(f) of the United States Court of Federal Claims (RCFC) provides, in pertinent part:

> Upon motion made by a party ... within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

RCFC 12(f). Plaintiff does not dispute that its motion is untimely. *See* Pl.'s Mot. to Strike at 2 (stating that "[t]his [m]otion is made at this time because of the length of time it took to get [an] accurate translation of the newspaper article [to which defendant] referred"). Moreover, the court finds that the material which plaintiff moves to strike from defendant's pleading has been explained fully in the parties' briefing. Because the referenced material creates no prejudice or confusion in this matter and does not bear on the cost issue to be decided by the court, the court declines to exercise its discretion to strike the referenced material in this circumstance. Plaintiff's Motion to Strike is DENIED.

## II. Plaintiff's Claim for Bid Preparation and Proposal Costs

The Tucker Act limits the monetary relief that this court may award in post-award bid protests to "bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2) (2000); *see also Naplesyacht.com, Inc. v. United States,* 60 Fed.Cl. 459, 478 (2004). The Federal Circuit observed in *E.W. Bliss Co. v. United States:*

> Proposal preparation expenses are a cost of doing business that normally are "lost" when the effort to obtain the contract does not bear fruit. In an appropriate case, however, a losing competitor may recover the costs of preparing its unsuccessful proposal if it can establish that the Govern-

ment's consideration of the proposals submitted was arbitrary or capricious. The standards that permit a disappointed competitor to recover proposal preparation expenses are high and the burden of proof is heavy.

77 F.3d 445, 447 (Fed.Cir.1996) (quoting *Lincoln Servs., Ltd. v. United States,* 230 Ct.Cl. 416, 678 F.2d 157, 158 (1982)); *see also Gentex Corp. v. United States,* 58 Fed.Cl. 634, 656 (2003) (stating that "a losing competitor may recover the costs of preparing its unsuccessful proposal if it can establish that the Government's consideration of the proposal submitted was arbitrary or capricious or in violation of applicable statute or regulation").

By its decision dated May 3, 2002, this court awarded bid preparation and proposal expenses to plaintiff.[3] *Impresa Construzioni Geom. Domenico Garufi v. United States,* 52 Fed.Cl. 421, 428 (2002) (*Impresa III*). After a failed attempt by the parties to reach a stipulation on an award of bid preparation and proposal costs, *see* Def.'s Supp. Resp. at 2, plaintiff filed briefing seeking $84,900 in bid preparation and proposal costs. Pl.'s B & P Claim at 4. Defendant initially challenged plaintiff's claim on the ground that the majority of the costs claimed "are represented by the unpaid 1999 invoices of proposed subcontractors that had prepared various proposal sections, relating to particular base services covered by the consolidated contract." Def.'s B & P Resp. at 2. Defendant argued that under the doctrine articulated in *Severin v. United States,* 99 Ct.Cl. 435, 1943 WL 4198 (1943), plaintiff was precluded from recovering bid preparation and proposal costs that were incurred by plaintiff's subcontractors. Def.'s B & P Resp. at 4–8. Defendant further argued that plaintiff was unable to recover bid preparation and proposal costs for work allegedly performed by plaintiff itself because plaintiff had failed to provide adequate proof that the costs were incurred and allocable to the preparation of its bid proposal. *Id.* at 8–11. After a hear-

---

**3.** For a full discussion of the factual background in this bid protest action, *see Impresa Construzioni Geom. Domenico Garufi v. United States,* 44 Fed.Cl. 540 (1999) (*Impresa I*), *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324 (Fed.Cir.2001) (*Impresa II*), *Impresa Construzioni Geom. Domenico Garufi v. United States,* 52 Fed.Cl. 421 (2002) (*Impresa III*) and *Impresa Construzioni Geom. Domenico Garufi v. United States,* 52 Fed.Cl. 826 (2002) (*Impresa IV*).

ing on the parties' arguments regarding plaintiff's claim for bid preparation and proposal costs, the court stated that it would disregard the proffered affidavit of Mr. Thomas P. Considine[4] and directed plaintiff, by Order dated September 26, 2003:

> [To] file with the Clerk of the Court briefing together with any supporting documentary evidence indicating a legal obligation by plaintiff to pay its subcontractors in connection with the referenced matter whether or not bid proposal and preparation costs are recovered in this proceeding. Plaintiff shall also support the reasonableness of the claimed expenses, shall indicate how the dollar values were established (including any currency conversions), and shall indicate which contract line items are attributable to which subcontractors. Plaintiff shall also provide evidence to support the existence and reasonableness of any expenses, including time and disbursements, claimed to have been incurred by plaintiff itself. Also, if any contention of plaintiff relies on the law of Italy, plaintiff shall support that contention by evidence of Italian law.

Order of 9/26/2003. The court further directed that:

> All evidence presented by plaintiff shall be of a type that would be admissible in support of a motion for summary judgment under Rule 56 and shall comply with applicable provisions of the Federal Rules of Evidence.

*Id.*

In Plaintiff's Supplemental Brief in Support of Plaintiff's Claim for Bid and Proposal Costs Pursuant to the Court's Order Dated September 26, 2003, plaintiff now seeks bid and proposal expenses of $104,577.[5]  Pl.'s

Claim Supp. at 21.  Plaintiff contends that "the evidence [now] before the Court [including the new sworn declaration of Domenico Garufi] is sufficient to establish that the amount of money requested was legally incurred by Garufi, [that] ... Garufi [was required] to pay these costs and that the amount incurred was reasonable, based on the size and scope of the CONSERV contract." *Id.* at 2–3.  Plaintiff argues that the cost of hiring Italian lawyers and accountants "to verify and further substantiate [plaintiff's] case ... is not a prudent business expense." *Id.* at 3.

The court now considers plaintiff's claim for bid proposal and preparation costs. The court examines, in turn, the portion of plaintiff's claim for costs incurred by its subcontractors and the portion of plaintiff's claim for work allegedly performed by plaintiff itself.

## A.   Plaintiff's claim for costs incurred by its subcontractors

■  The Court of Claims recognized in *Severin v. United States* that if a contractor proved that "in the performance of [its] contract with the Government [it] became liable to [its] subcontractor for the damages which the latter suffered, ... [this] might well constitute actual damages" recoverable by the contractor, even though the contractor has not yet paid the subcontractor.  99 Ct.Cl. 435, 443 (1943).  In the absence of such proof, however, the Court of Claims made clear that a contractor is precluded from recovering in its claim for damages those losses suffered by its subcontractor. *Id.* at 443–44.

---

4. The court viewed the unsworn "affidavit" of Mr. Considine, a purported expert on the reasonableness of plaintiff's claim offered by plaintiff in support of its claim for bid and proposal costs, Pl.'s B & P Claim Ex. D, as "self-serving" rather than probative of the reasonableness of the expenses, *see* Transcript of Hearing held on September 25, 2003 (Tr.) at 32–33.

5. The increased amount of plaintiff's claim, specifically from $84,900 to $104,577, is due to plaintiff's use of the November 21, 2003 conversion rate from Euros to United States Dollars.

*See* Pl.'s Claim Supp. at 19 n. 3;  Def.'s Supp. Resp. at 5 n. 3. Defendant states in its briefing that "[t]he Euro/U.S. Dollar exchange rate fluctuated greatly during the period between early 1999 (when the offerors' revised proposals were submitted to the Navy) and today." Def.'s Supp. Resp. at 5 n. 3. Defendant further states that the subcontractors' invoices submitted as evidence of plaintiff's costs were created in September 1999. *Id.* Yet, defendant observes, plaintiff has offered no explanation for using the date of November 21, 2003 in calculating the exchange rate. *Id.*

Plaintiff correctly states that "the case law merely requires that the expenses were incurred by the contractor and [that] the contractor is obligated to make the payments." Pl.'s Claim Supp. at 3. Plaintiff attempts to distinguish this case from the facts in two decisions by the General Services Administration Board of Contract Appeals (GSBCA) following the *Severin* decision, namely *Sperry Corp.*, GSBCA No. 8514–C, 87–2 B.C.A. (CCH) ¶ 19,844, 1987 WL 40904, 1987 GSBCA LEXIS 766 (May 4, 1987) (*Sperry*) and *Systemhouse Federal Systems, Inc.*, GSBCA No. 9446–C, 89–2 B.C.A. (CCH) ¶ 21,773, 1989 WL 42932, 1989 GSBCA LEXIS 149 (Apr. 26, 1989) (*Systemhouse*). Pl.'s Claim Supp. at 5–6. In *Sperry*, the GSBCA denied the recovery of proposal expenses reasoning that "Sperry is under no legal obligation to recompense [its subcontractor] for these costs." 1987 GSBCA LEXIS 766, at *2. In *Systemhouse*, the GSBCA denied the recovery of a subcontractor's proposal preparation costs on the ground that the payment agreement between the prime contractor and its subcontractor was conditional, requiring the prime contractor to pay the subcontractor only if the former received payment. 1989 GSBCA LEXIS 149, at *8–9 (subtracting the subcontractor's costs from the contractor's claim explaining that "Systemhouse'[s] purported obligation to reimburse [its subcontractor] if it recovers the latter's costs is not sufficient" and concluding that "[t]hese costs remain expenses incurred by [its subcontractor], not by Systemhouse").

Stating that the companies it hired should be viewed not as subcontractors but as "as estimators ... [that] assist[ed] in estimating the cost of performing the work involved in the contract and bidding the job," Pl.'s Claim Supp. at 3, plaintiff contends that it "explicitly has committed to pay the costs [incurred by its estimators] and [it] is obligated to make these payments [to its estimators] regardless of the outcome of th[e] [court's] decision," *id.* at 5–6. Plaintiff asserts that "[t]he subcontractors in Garufi participated *fully* as the term was used in *Boines Construction & Equipment Co.*, Comp. Gen. B–279575.4, 2000 WL 361647 (Apr. 5, 2000) (unpublished decision) (*Boines Construction*), in preparing the offer from a technical and pricing perspective."[6] Pl.'s Supp. Claim at 6. However, even if plaintiff's subcontractors participated "fully," as plaintiff alleges, plaintiff has still, the government argues, failed to provide, as *Boines Construction* itself requires, "evidence of an obligation by the protester to repay such costs regardless of whether or not they are recovered from the government." 2000 WL 361647, at *3; *see also* Def.'s Supp. Resp. at 8–9.

Defendant argues that "[b]ecause ... Garufi has still not provided sufficient documentary evidence that establishes a legal obligation to pay these five-year-old invoices, ... Garufi's claim, to the extent that Garufi seeks costs associated with the subcontractor invoices, is precluded by the *Severin* doctrine." Def.'s Supp. Resp. at 7. Defendant again challenges plaintiff's proof of its claim, in particular, plaintiff's continued reliance on the "uncorroborated declaration of Mr. Garufi." *Id.* Defendant points out that, in contravention of the court's September 26, 2003 Order, Garufi "ha[s] failed to provide *any* ... documentation to support Mr. Garufi's vague and self-serving allegation that a contractual arrangement existed between Garufi and the proposed subcontractors." *Id.* De-

---

6. In *Boines Construction*, the Comptroller General observed that:

> We have allowed a protester to recover the bid preparation costs incurred by its potential subcontractor in only one limited circumstance-where the costs were incurred by the subcontractor as part of a joint effort with the protester, participating fully in the bid preparation process, and not limiting its role to merely providing a quotation for certain work under the solicitation. Consistent with the Competition in Contracting Act of 1984, before recommending that the protester recover bid preparation costs incurred by its potential

> subcontractor from the contracting agency, we will require evidence of an obligation by the protester to repay such costs regardless of whether or not they are recovered from the government.

2000 WL 361647, at *3 (citations omitted). On the particular facts of the case, the Comptroller General did not recommend that Boines Construction recover the bid preparation costs of its subcontractor because the payment agreement between Boines Construction and its subcontractor was contingent upon Boines Construction's recovery from the government. *Id.* at *3–4.

fendant adds that "Garufi has provided no explanation why it could not obtain corroborating declarations from officials of the proposed subcontractors whose invoices are presented in Garufi's B & P cost claim." *Id.* at 8 (quoting *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir.1999)) (" 'In a situation in which a plaintiff claims to have an oral contractual relationship with a third party, it is prudent for such a plaintiff to have an affirmation of some kind from the third party, or evidence from which it can be reasonably inferred[,] to substantiate the existence of the alleged relationship.' ").

Moreover, defendant argues that, although Mr. Garufi's declaration "contains more detailed allegations than did his prior statement," he still does not answer directly the *Severin* question. *Id.* at 9. Defendant asserts that the proper inquiry under *Severin* "is *not* whether Garufi is obligated to pay the subcontractors even if it did not receive the contract, but whether Garufi is obligated to pay the subcontractors even if Garufi recovers nothing from the United States in this proceeding." *Id.* Defendant contends that Mr. Garufi's declaration does not preclude the possibility that an arrangement existed between Garufi and the subcontractors providing that the subcontractors would be paid for their proposal work regardless of whether Garufi received a contract award, but if and only if Garufi recovered bid preparation costs from defendant. *Id.*

Moreover, as defendant correctly noted in its briefing, *id.* at 10, notwithstanding Mr. Garufi's allegation that "under Italian law, [plaintiff] is obligated to pay the proposal expenses incurred by each of the subcontractors," Plaintiff's List of Exhibits Attached to Plaintiff's Supplemental Brief in Support of Plaintiff's Claim for Bid and Proposal Costs Pursuant to the Court's Order Dated September 26, 2003 (Pl.'s Ex.) 1, ¶ 36, that contention is not supported by any evidence of Italian law (as explicitly required by the

court's order of September 26, 2003). Nor does Mr. Garufi's declaration establish, as required by the court's September 26, 2003 Order, that plaintiff "has some other (noncontractual) legal obligation to pay the subcontractor invoices." Def.'s Supp. Resp. at 10.

Here, plaintiff has offered as proof in support of its total claim: (1) the declarations of Messrs. Garufi and Considine, Pl.'s Exs. 1, 10; (2) five notarized invoices with English translations (and one untranslated invoice) submitted by certain named subcontractors for the bid and proposal costs respectively incurred in connection with the various services to be provided under the contract, along with one notarized invoice with English translation prepared in-house,[7] Pl.'s Exs. 2–8; (3) a copy of the bill submitted by Joseph Interdonato for proposal writing, Pl.'s Ex. 9; (4) the Bloomberg Printout of the foreign exchange rate on November 21, 2003 between Euro currency and the United States dollar and between the Euro and the Italian lira, Pl.'s Ex. 11; (5) a copy of the Federal Register rules and regulations regarding responsibility determination, Pl.'s Ex. 12; and (6) a copy of plaintiff's price proposal and technical proposal, Pl.'s Ex. 13.

The declaration of Mr. Garufi identifies each of the subcontractors that performed cost estimating services for plaintiff in connection with the various services contemplated by the contract award, including janitorial, grounds maintenance, heating, ventilation, and air conditioning, fire protection, fuel reclaimer, non-hazardous waste pumping, drying beds maintenance, weapons grounds system control, cranes maintenance, and barracks maintenance services. Pl.'s Ex. 1 ¶¶ 9–27. Mr. Garufi's declaration further states that the proposal preparation costs were reasonable based on the size and complexity of the contract and based on his experience in

---

7. Each of the submitted invoices was similarly lacking in detail. Pl.'s Exs. 2–8. Each submitted invoice summarily identified the general nature of the performed service, a total number of hours and an hourly rate of payment. *Id.* For example, the translated invoice submitted by the subcontractor Fumagalli Impianti SPA stated:

With referral to Contract 33191–98–R–1807[,] we com[m]unicate the costs by[ ]us sustained for the preparation of the bid relative to our competence, that is electrical & mec[ ]hanical. Total hours 220 X Lit. (Italian lira) 122.000 Lit/hr = Lit. 26.840.000

Pl.'s Ex. 2.

construction in Southern Italy.[8] *Id.* ¶¶ 12, 15, 18, 21, 24, 27. Mr. Garufi explains that the obligation to pay these bid preparation costs was not contingent upon any contract award, *id.,* ¶¶ 11, 14, 17, 20, 23, 26, and that "[i]f the Court determines that [plaintiff] will not be able to recover the full amount of bid and proposal expenses requested in its claim, [plaintiff] is still obligated to pay," *id.* at ¶ 35. Mr. Garufi's attestations regarding plaintiff's obligation to pay the proposal preparation costs of the subcontractor-estimators are uncorroborated. Plaintiff offers no other evidence either of an obligation under Italian law to pay or of the terms of the purported agreement to pay.

Before addressing the reasonableness of the claimed expenses of the subcontractors in bid preparation in this case, the court must consider whether plaintiff's evidence regarding its obligation to pay its subcontractors is sufficient to void the applicability of the *Severin* doctrine which precludes a contractor from recovering damages for losses suffered by its subcontractors. *See Severin,* 99 Ct.Cl. at 443–44. Plaintiff's evidence regarding its obligation to pay its subcontractors consists only of the sworn but uncorroborated declaration of Mr. Garufi, plaintiff's chief executive officer. *See* Pl.'s Ex. 1 at ¶¶ 11, 14, 17, 20, 23, 26, 34–36.

With respect to the evidentiary sufficiency of an "uncorroborated" statement by plaintiff, the Court of Federal Claims stated in *Doe v. United States,* 58 Fed.Cl. 479, 483 (2003) that " '[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment.' " (quoting *Shank,* 192 F.3d at 682 (quotation omitted) and citing *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 164 (Fed.Cir. 1985) (stating that "mere allegations by declaration or otherwise do not raise issues of fact needed to defeat a motion for summary judgment")). *See also Rutherford v. Medical Dept. of Dept. of Corrections,* 76 Fed.Appx. 893, 899 (10th Cir.2003) (finding that "[a] single affidavit making a conclusory statement . . . unsupported by [other] records, does not satisfy the summary judgment requirement [of] . . . demonstrating [that] no genuine issues of material fact exist"); *Wachovia Bank, N.A. v. Fed. Reserve Bank of Richmond,* 338 F.3d 318, 323 n. 5 (4th Cir. 2003) (noting that an affidavit that is "unsupported by any evidence[ ] amount[s] to nothing more than a legal conclusion that carries no weight for purposes of summary judgment") (citation omitted); *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995) (stating that "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment") (citation omitted).

Notwithstanding an opportunity to supplement its initially submitted documentary evidence to support its claim for bid proposal

---

8. In further support of its claim, plaintiff asserts that its costs were reasonable and that it has established the reasonableness of its costs through the declarations of Domenico Garufi and Thomas Considine. Pl.'s Supp. Claim at 7–13; Pl.'s Ex. 1 (Declaration of Domenico Garufi); Pl.'s Ex. 10 (Declaration of Thomas Considine). The reasonableness of the costs is irrelevant if the costs are not properly supported.

To buttress its claim that the costs it seeks are reasonable, plaintiff now provides, in its supplemental briefing, a sworn declaration by Mr. Considine, a self-described "expert in the preparation of bids and proposals for government contracts" based on his "twenty years experience at a major [unidentified] aerospace firm in contracting to the U.S. Government for naval weapons systems" and seven years experience as a "bid and proposal consultant for numerous [unidentified] small, medium and large companies for a wide variety of government contract-

ing efforts." Pl.'s Ex. 10 at 1. Mr. Considine states that "bid and proposal costs for proposals containing management, technical, past performance and pricing data (such as the Conserv proposal) can generally be expected to range from 0.1% to 2% of the proposed contract value." *Id.* at 2. Pointing to Garufi's submitted bid and proposal costs of $84,900, Mr. Considine opines that the claimed costs "are slightly less than 0.6% of the Garufi's submitted [bid] price of $14,700,000 for this contract . . . [and, therefore,] are well within th[e] standard range" for bid preparation costs. *Id.* Mr. Considine's "expert" opinion contains no specifics regarding his education, experience, training or any discussion regarding the reliability of his methods. *See* Fed.R.Evid. 702. Absent any of the indicia of reliability commonly associated with expert opinions, the court declines to afford the opinion any weight. *See id.*

and preparation costs, plaintiff has declined even to submit corroborating declarations from its subcontractors regarding the respective payment obligations between plaintiff and the subcontractors. The Court of Claims recognized in *Severin* that, in the absence of proof of a contractor's liability to a subcontractor, a contractor is precluded from recovering in its claim for damages those losses suffered by its subcontractor. 99 Ct.Cl. at 443–44. The court finds that plaintiff has failed to carry its burden of proof in this case and DENIES, as part of plaintiff's claim for bid proposal and preparation costs, the recovery of those expenses incurred by plaintiff's subcontractors in connection with the bid preparation at issue here.

B. Plaintiff's claim for costs for work allegedly performed by plaintiff itself

■ Defendant also challenges the portion of plaintiff's claim for costs "allegedly" incurred by plaintiff directly, in particular, the "proposal work relating to the cranes and barracks elements of [plaintiff's] proposal and ... [the] associated administrative costs." Def.'s Supp. Resp. at 10. Defendant argues that plaintiff has "failed to produce sufficient proof that the costs were actually incurred and [are] allocable to the proposal at issue." *Id.* at 10–11. Defendant also argues that plaintiff "has completely failed to provide *any proof* that establishes that the alleged overhead costs were actually incurred and were allocable to [its] preparation of its proposal." Def.'s Supp. Resp. at 12.

In *Lion Raisins, Inc. v. United States*, this court stated:

To be awarded bid and proposal costs in a successful bid protest action, the contractor similarly must show those bid and proposal costs to be allocable and reasonable. *Coflexip & Servs., Inc. v. United States*, 961 F.2d 951, 953 (Fed.Cir.1992). Expenses compensable as bid preparation costs are those in the nature of researching specifications, reviewing bid forms, examining cost factors, and preparing draft and actual bids. *Finley v. United States*, 31 Fed.Cl. 704, 707 (1994); *Power Sys-*

*tems*, [Comp. Gen. B–210032.2,] 84–1 Comp. Gen. Proc. Dec. ¶ 344, [1984 U.S. Comp. Gen. LEXIS 1379,] at [\*3] [ (Mar. 26, 1984) ] (recovery is limited "only to those expenses incurred in the preparation of the bid itself").

52 Fed.Cl. 629, 630–31 (2002) (footnote omitted). The law is well-settled that to recover its proposal preparation costs, a protester must support its claim by submitting evidence that " 'th[ ]e costs were incurred and are properly attributable to proposal preparation.' " *Lion Raisins*, 52 Fed.Cl. at 631 (quoting *Stocker & Yale, Inc.*, Comp. Gen. B–242568.3, 93–1 Comp. Gen. Proc. Dec. ¶ 387, 1993 U.S. Comp. Gen. LEXIS 502, at \*8 (May 18, 1993), and citing *Maintenance & Repair*, Comp. Gen. B–251223.4, 94–1 Comp. Gen. Proc. Dec. ¶ 381, 1994 Comp. Gen. LEXIS 562, at \*6 (June 24, 1994) (permitting recovery of claimed amount that is adequately documented and proved reasonable) and *Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed.Cir.1987) (requiring plaintiff to submit adequate documentation to demonstrate reasonableness of claimed costs)). *See also Tri Tool, Inc.*, Comp. Gen. B–265649, B265649.4, 97–2 Comp. Gen. Dec. ¶ 69, 1997 WL 561351, at \*2 (Sept. 9, 1997) (unpublished decision) (stating that "[a] protester seeking recovery of its bid preparation costs must submit sufficient evidence to support its claim that those costs were incurred and are properly attributable to bid preparation"). A protester may show that the claimed costs "were incurred and are properly attributable to bid preparation" by establishing that "under the circumstances of an individual procurement, the claimed costs were incurred in anticipation of competing for the specific contract at issue." *Tri Tool, Inc.*, 1997 WL 561351, at \*2.

In deciding whether the evidence offered by plaintiff in this case is sufficient to establish that the claimed costs "were incurred and are properly attributable to proposal preparation," *Lion Raisins*, 52 Fed.Cl. at 631 (quotation omitted), the court considers the guidance provided in several decisions by the Comptroller General.[9]

In *W.S. Spotswood & Sons, Inc.*, Comp. Gen. B–236713, B–236713.3, 90–2 Comp. Gen.

9. The Federal Circuit has stated that "[w]hile     [Comptroller General] decisions are not binding

Proc. Dec. ¶ 50, 1990 WL 293706 (July 19, 1990), the Comptroller General stated that "[a] protester seeking to recover the costs of pursuing its protest and preparing its proposal must submit sufficient evidence to support its monetary claim." *Id.* at *2. The Comptroller General indicated that "sufficient evidence" might reasonably include "document[ation] in some detail [reflecting] the amount and purposes of its employees' claimed efforts" and proof "that the claimed hourly rates reflect the employees' actual rates of compensation plus reasonable overhead and fringe benefits." *Id.* In *Patio Pools of Sierra Vista, Inc.*, Comp. Gen. B–228187, B–228188, B–228187.4, B–228188.3, 89–1 Comp. Gen. Proc. Dec. ¶ 374, 1989 WL 240596 (Apr. 12, 1989), the Comptroller General explained that, in support of a claim for direct labor costs, a protester "should provide the names of employees, documentation supporting their hourly rates, the number of hours worked and a description of the tasks performed" and, if available, also provide time cards or payroll records.[10] *Id.* at *2. The Comptroller General further advised that a protester should provide "a breakdown of overhead costs and supporting documentation including utility and other related bills for the period involved." *Id.* In *Princeton Gamma–Tech, Inc.*, Comp. Gen. B–228052, B–228052.5, 89–1 Comp. Gen. Proc. Dec.

¶ 401, 1989 WL 237478 (Apr. 24, 1989), the Comptroller General disallowed proposal preparation costs that were "not supported by certification or individual affidavits." *Id.* at *3.

The Comptroller General, however, has stated that "[t]here is no requirement that a protester produce contemporaneous records to establish its entitlement to the award of costs." *Data Based Decisions, Inc.*, Comp. Gen. B–232663, B–232663.3, 1989 WL 237551, at *4 (Dec. 11, 1989). In *Data Based Decisions*, the Comptroller General concluded that a submitted document reconstructing the hours spent by a protester's president in pursuing the protest, claimed time that was corroborated by attorney billing statements, was "sufficiently precise to determine the reasonableness of the hours claimed." *Id.* at *4. The Comptroller General nonetheless denied the protester's claim for preparation costs for alleged employee time and questioned how the protester could have incurred the alleged employee time when the protester had stated in its protest submissions that its proposal "was essentially another company's winning proposal ... updated ... merely to include the new job positions of the solicitation." *Id.* at *5.

In plaintiff's briefing in this case, plaintiff has drawn the court's attention to an unpublished order in the matter of *Seattle Security Services, Inc. v. United States*, No. 99–139 C

authority, they may nevertheless be considered because of the Comptroller General's experience in dealing with bid protests." *Planning Research Corp. v. United States*, 971 F.2d 736, 740 (Fed. Cir.1992). *See also DGS Contract Serv., Inc. v. United States*, 43 Fed.Cl. 227, 238 (1999) (stating that "[w]hile the decisions of the Comptroller General are not binding, the court recognizes that the General Accounting Office has special expertise in th[e bid protest] area, and its decisions may provide useful guidance to the court") (citations omitted); *Advanced Distrib. Sys., Inc. v. United States*, 34 Fed.Cl. 598, 604 n. 7 (1995) (noting that "[w]hile the court recognizes the General Accounting Office's special expertise and generally accords deference to decisions of the Comptroller General, those decisions are not controlling") (citations omitted).

10. As expressed in an unpublished decision in the matter of *Innovative Refrigeration Concepts*, the Comptroller General has required evidence of "actual rates of compensation" to support a protester's claim for bid preparation costs to avoid the payment of employee compensation rates that have been adjusted to include a mea-

sure of profit. Comp. Gen. B–258655, B–258655.2, 97–2 Comp. Gen. Proc. Dec. ¶ 19, 1997 WL 397216, at *2 (July 16, 1997). In *Innovative Refrigeration Concepts*, the Comptroller General explained that because "[a] protester may not recover profit on its own employee's time in ... preparing its bid, ... [the] claimed rates must be based upon actual rates of compensation, plus reasonable overhead and fringe benefits, and not market rates." *Id.* To establish the costs incurred by its employees, the protester in that case listed for each employment position, "the [respective] services performed, dates of performance, hours performed, and hourly rate[s]." *Id.* at *1. Due to the absence of evidence showing how the hourly rates claimed for the protester's employees were calculated and how the claimed rates relate to the employees' actual rates of compensation plus reasonable overhead and fringe benefits, the Comptroller General disallowed the costs that the protester claimed were incurred by its employees for bid preparation. *Id.* at *2.

(Fed.Cl. complaint filed Mar. 17, 1999), a bid protest brought before the Court of Federal Claims by the same plaintiff's counsel involved in this case. *See* Order dated April 10, 2000 in *Seattle Sec. Servs., Inc. v. United States (Seattle Security* 4/10/00 Order). Further to its decision in *Seattle Security Services, Inc. v. United States,* 45 Fed.Cl. 560, 573 (2000) and by the *Seattle Security* 4/10/00 Order, the court awarded plaintiff's bid and proposal expenses.[11] The claimed expenses were supported by the affidavit of the president of the protester describing his time and the time of another named employee as the "standard amount of time" spent in preparing a response to a solicitation. *See* Seattle Security Services, Inc[.]'s Supplemental [I]nformation in [R]elation to their Bid and Proposal [E]xpenses dated March 29, 2000 in *Seattle Sec. Servs., Inc. v. United States,* No. 99–139 C (Fed.Cl. complaint filed Mar. 17, 1999). In addition to the affidavit, copies of a W–2 income tax form for both the president of the protester and the named employee were provided to verify the claimed hourly rates. *Id.*

In this case, plaintiff has submitted no evidence regarding its directly incurred bid preparation costs. Notwithstanding the court's order directing plaintiff to provide specific documentary evidence in support of its claim, plaintiff has declined to expend the effort to prove its claim. Plaintiff states that

"to spend significant amounts of money on Italian lawyers and accountants to verify and further substantiate it case ... [would] not be prudent from a business standpoint considering the amount of time and energy and money already spent in pursuing this case." Pl.'s Claim Supp. at 3. The court, however, fails to see why it would have been necessary to hire "Italian lawyers and accountants" to provide such basic evidence as tax or payroll records.

In the absence of any evidence of the bid preparation costs directly incurred by plaintiff, plaintiff's claim is wholly unsupported and legally insufficient. Accordingly, the court DENIES plaintiff's claim for its directly incurred bid preparation and proposal costs.

## III. Conclusion

For the foregoing reasons, plaintiff's motion to strike is DENIED. All portions of plaintiff's claim for bid preparation and proposal costs are DENIED. The Clerk of the Court is directed to enter judgment for defendant on the issue of bid preparation and proposal costs.

IT IS SO ORDERED.

---

11. In its Bid and Proposal Expenses filing dated February 1, 2000, plaintiff attached a document listing eleven tasks that were described as "services rendered" in the bid preparation, listing the total numbers of hours expended and listing the hourly rate for performing the delineated services. *See* Plaintiff's Bid and Proposal Expenses filed on February 1, 2000 in *Seattle Sec. Servs., Inc. v. United States,* No. 99–139 C (Fed. Cl. complaint filed Mar. 17, 1999). The described "services rendered" included: (1) reviewing the 156–page solicitation, (2) pricing the solicitation, (3) gathering the cost of equipment and uniforms, (4) ascertaining the tax rate for the contract, (5) creating an Excel spreadsheet for the proposal, (6) entering the data into the Excel spreadsheet, (7) reviewing and discussing the proposal, (8) receiving amendment 001 to the solicitation, (9) copying all necessary documents, (10) assembling the past performance information, certifications, representations and related forms and (11) compiling all of the information and preparing the proposal for submission. *Id.* The submitted description of "services rendered" did not include an allocation of the time spent in performing each of the listed tasks. *See id.* Defendant opposed the costs claimed in plaintiff's filing on the ground that plaintiff failed to substantiate its claimed expenses and sought unrecoverable costs. Defendant's Response to Plaintiff's Supplemental Bid and Proposal Expenses Submission filed on April 7, 2000 at 1 in *Seattle Sec. Servs., Inc. v. United States,* No. 99–139 C (Fed.Cl. complaint filed Mar. 17, 1999). Further to a telephonic status conference with the parties to discuss plaintiff's filing "detailing its bid and proposal expenses," the court directed plaintiff to re-file its estimated costs more clearly itemizing the basis for its claimed costs. Order dated March 15, 2000 in *Seattle Sec. Servs., Inc. v. United States,* No. 99–139 C (Fed.Cl. complaint filed Mar. 17, 1999). Plaintiff responsively filed supplemental information relating to its bid and proposal expenses. *See* Seattle Security Services Inc[.]'s Supplemental [I]nformation in [R]elation to their Bid and Proposal [E]xpenses filed on March 29, 2000 in *Seattle Sec. Servs., Inc. v. United States,* No. 99–139 C (Fed.Cl. complaint filed Mar. 17, 1999).